This is an appeal from a judgment based on a jury verdict in favor of Carol Strickland against Bruce Palmer and Washington National Insurance Company. We affirm.
On January 15, 1981, Bruce Palmer met with Carol Strickland and members of her family to discuss medical insurance. Mrs. Strickland was five feet, two inches tall, and weighed 180 pounds. Palmer described plans for medical insurance with four different companies, including a plan with Washington National which Mrs. Strickland and her husband chose. She completed a Washington National application for insurance; Palmer tore from the application a detachable form called a "conditional receipt" and gave it to Mrs. Strickland. He took a check from Mrs. Strickland for $100. The receipt stated that the effective date of coverage was January 15, 1981.
Mrs. Strickland and members of her family testified that Palmer told them at the meeting that Strickland's insurance coverage would be effective as of that date, January 15, 1981, and that she would be covered if she had an accident going home from that meeting. As a result of these assurances, Mrs. Strickland cancelled an application for hospitalization insurance with another company. Palmer testified, to the contrary, that he told Strickland she would be covered as of that date only "if everything was in order." The application for insurance and a statement in the conditional receipt given to Mrs. Strickland provided that no agent was authorized to make or modify contracts, to waive any of the company's rights or requirements, or to bind the company by making or receiving representations.
Four days after the meeting with Palmer, Mrs. Strickland fell and hurt her ankle. At the time of the accident, Palmer had not yet submitted Mrs. Strickland's application for medical insurance to Washington National. Palmer testified that he submitted the application to John Martin, a general agent for Washington National, on January 22, 1981. Following subsequent underwriting review, Washington National declined to issue a policy of coverage for Mrs. Strickland on grounds that she was physically unfit.
Palmer testified that his authority with Washington National was limited to the solicitation of applications and the collection of initial premiums. Martin testified *Page 874 
that Palmer could solicit applications, but had no authority to bind Washington National to coverage. He stated that Palmer was a broker for Mutual of New York, and was not an agent for Washington National. The record shows, however, that Bruce Palmer was a licensed agent for Washington National in the State of Alabama. The document evidencing this fact provided for identification of the status of an applicant as agent, broker, or solicitor. Mr. Palmer's application included the code number denoting "agent." This application, which purported to designate Palmer's status for 1980, 1981, and 1982, was dated November 16, 1981, ten months after Palmer's meeting with Mrs. Strickland and her family. Martin was the notary public who acknowledged Palmer's signature on that application.
Mrs. Strickland sued Washington National and Bruce Palmer for fraud and misrepresentation. The jury awarded Mrs. Strickland $22,500. The parties had stipulated that the amount of compensatory damages involved in the case was $1,369.14, so $21,130.86 of the verdict constituted punitive damages. Washington National moved for directed verdict at the close of plaintiff's evidence and at the close of all the evidence. In its post-trial motion for JNOV and/or new trial, Washington National argued that there was insufficient evidence to support Mrs. Strickland's allegations of fraud and to support an award of punitive damages. We hold that Washington National's pre-verdict and post-trial motions were properly denied.
The first issue before this Court is whether Washington National could properly be found liable for the misrepresentation by Palmer that Mrs. Strickland had insurance coverage as of January 15, 1981. This would depend upon whether Palmer was acting as a general or soliciting agent for Washington National or as an independent agent or broker. If Palmer were a general or soliciting agent, Washington National would be liable. If Palmer were an independent agent or broker, Washington National would not be liable. A discussion of the distinctions between brokers, agents, and soliciting agents will go far to allay any initial confusion.
A "general agent" is one who has authority to transact all of the business of the principal, of a particular kind, or in a particular case. Southern States Fire Insurance Co. v.Kronenberg, 199 Ala. 164, 170-71, 74 So. 63, 67, (1917). The powers of such an agent are coextensive with the business entrusted to his care, authorizing him to act for the principal in all matters coming within the usual and ordinary scope and character of such business. Id., 199 Ala. at 171, 74 So. at 67. A general agent has full power to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks. McGhee v. Paramount Life Insurance Co., 385 So.2d 969
(Ala. 1980). In fact, a general agent "stands in the shoes" of the principal for the purpose of transacting business entrusted to him. Since a general agent's powers are coextensive with the business entrusted to him, his fraudulent act is the fraudulent act of his insurer principal as well.
An insurance company also has the right to employ agents with limited authority. Robinson v. Aetna Insurance Co., 128 Ala. 477,30 So. 665 (1901). A "special agent," as distinguished from a "general agent," is authorized to act for the principal only in a particular transaction, or in a particular way.Southern States Fire Insurance Co., supra, 199 Ala. at 171,74 So. 67. In the insurance context, the most prevalent type of special agent is the "soliciting agent." A soliciting agent is different from a general agent in that he has no power to bind his insurer principal in contract. Watson v. PrudentialInsurance Co., 399 So.2d 285 (Ala. 1981). However, when a soliciting agent commits a fraud upon one who seeks insurance coverage, his insurer principal will be liable for that fraud, if the fraud was perpetrated by the agent within the scope of his employment. The liability of an insurer for the fraudulent acts of its soliciting agents is grounded in the doctrine of "respondeat *Page 875 
superior," and not the doctrine of agency. National StatesInsurance Co. v. Jones, 393 So.2d 1361 (Ala. 1980). Since a soliciting agent is regarded as the "servant" of the insurer "master," the insurer has the full right of control over the agent's actions. A general agent, however, stands in the shoes of the principal; his actions are regarded as those of the principal. The law deems the principal to have "participated" in the fraud of its general agent, and so subjects the principal to direct liability. Where a soliciting agent commits fraud the insurer's liability is vicarious, and the principal is liable in spite of the fact that he did not participate in the fraud, or even forbade it. National States Insurance Co. v.Jones, supra, at 1367.
An independent agent or broker is usually not an agent for the insurer at all; rather, he is the agent of the insured. See Code 1975, § 27-7-1. For example, this Court has held that when an independent agent or broker fails in his duty to obtain insurance coverage, the principal may sue either for a breach of contract, or, in tort, for breach of duty imposed on the agent or broker to sue reasonable skill, care, and diligence in obtaining insurance. Highlands Underwriters Insurance Co. v.Eleganté Inns, 361 So.2d 1060 (Ala. 1978). In Highlands, the principal was the insured.
Washington National contends that Palmer was an independent agent or broker and that it was not liable for Palmer's misrepresentation. It cites Northington v. Dairyland InsuranceCo., 445 So.2d 283 (Ala. 1984). In the Northington case, it was undisputed that the person committing the fraud was an independent agent and broker. But the court properly analyzed Dairyland Insurance Company's liability for the fraud of the independent agent/broker in terms of actual and apparent authority, because the issue was whether the agent/broker, normally an agent of the insured, was also acting as an agent for Dairyland.
Although an independent agent or broker is normally an agent for the insured, for some purposes he may at the same time be an agent for the insurer as well. See Mobile Insurance, Inc. v.Smith, 441 So.2d 894 (Ala. 1983). In such cases, if the insurer principal authorizes the agent to make representations, and the agent makes those representations within the scope of his authority to make them, the principal will be liable if those representations are false. In other words, an insurer's liability for the fraud of an independent agent or broker is predicated upon actual or apparent authority conferred upon the agent/broker by the insurer to make representations on the insurer's behalf. The doctrine of respondeat superior does not apply in the independent agent or broker situation because the insurance company does not exert sufficient control over the activities of the agent/broker to put him in the same position as a company employee. An independent agent or broker can never impose liability upon his principal for representations that are not authorized by the principal.
In the instant case, appellant Washington National relies upon the Northington case for the proposition that it is not liable for Palmer's misrepresentation to Mrs. Strickland. But whereas in Northington it was clear that the person committing the fraud was an independent agent and broker, in the instant case Palmer's status is the subject of dispute. The issue is whether the jury could properly have found Palmer to be a general or soliciting agent for Washington National so that Washington National would be liable for Palmer's misrepresentation to Mrs. Strickland. The evidence clearly shows that Palmer had no actual or apparent authority to make the representations, so if Palmer had been an independent agent or broker, Washington National would not be liable for the fraud. Therefore, we must examine under the applicable standards of review whether the evidence indicates that Palmer was acting as a general or soliciting agent.
In reviewing denials of motions for directed verdict and for judgment notwithstanding the verdict, this Court has held *Page 876 
that the evidence must be examined in the light most favorable to the nonmoving party. Carnival Cruise Lines, Inc. v. Snoddy,457 So.2d 379 (Ala. 1984). Also, a strong presumption favors a jury's verdict and a trial court's refusal to grant a new trial. Matthews Brothers Construction Co. v. Lopez,434 So.2d 1369 (Ala. 1983).
There is sufficient evidence in the record to support the jury verdict in favor of Mrs. Strickland. Even though Martin testified that Palmer was a broker, and even though the record shows that Palmer offered four different companies' policies to Mrs. Strickland for her consideration, there is evidence indicating that Palmer was a licensed agent for Washington National. Copies of Palmer's Alabama Department of Insurance license and license application were introduced at trial. The license application gives the applicant a choice of describing himself as "agent," or "broker," or "solicitor." Palmer was designated as "agent" in the license application. Although the application was dated November 16, 1981, ten months after Palmer's meeting with Mrs. Strickland and her family, it was admitted into evidence without objection. The license itself purports to cover the years 1980, 1981, and 1982, so it described Palmer's past, present, and future status with Washington National, including his status at the time he took Mrs. Strickland's application. Martin notarized Palmer's signature on the license application. Likewise, Washington National provided Palmer with applications, sales literature, and instructions. Martin knew that persons purchasing Washington National insurance from Palmer would be relying on Palmer's representations about insurance coverage. In order to hold Washington National liable for Palmer's misrepresentation, the jury must have found that Palmer was either a general agent, thereby subjecting Washington National to direct liability, or that he was a soliciting agent, thereby subjecting Washington National to vicarious liability under the doctrine of respondeat superior. There is sufficient evidence in the record to support either finding by the jury.
Washington National also argues that the jury's award of punitive damages was improper due to a lack of proof of any "gross, malicious, or oppressive conduct" by Palmer when he defrauded Mrs. Strickland. This argument is without merit because it represents an incorrect interpretation of the law; this Court, in American Honda Co. v. Boyd, 475 So.2d 835 (Ala. 1985), has stated that evidence of gross, malicious, or oppressive conduct need not be found before a jury can impose punitive damages. All that is necessary is that there be evidence to establish an intent to deceive or defraud on the part of the defendant.
In this case, the evidence, when viewed in the light most favorable to the nonmoving party, shows that an award of punitive damages by the jury was proper. The evidence of fraud in this case consists of Palmer's verbal statement to Mrs. Strickland that coverage would be effective as of January 15, 1981, and Palmer's handwritten notation on the conditional receipt, to wit: "coverage effective 15 January 81 on Carol and children." These representations were obviously ineffective for contract purposes in light of the following language found in the conditional receipt:
 "This Conditional Receipt does not create any temporary or interim insurance and does not provide any coverage except as expressly provided herein. This payment is received subject to the agreements contained in part 1 of the application and to the following terms and conditions:
 "1. If the Company shall be satisfied that on the date of the application or the date of the last of any required medical examinations, whichever is the later date, the person or persons proposed for insurance were insurable under the Company's rules governing the acceptance of risks at the classification and for the amount and plan of insurance applied for, and
 "2. if the amount paid with the application equals or exceeds a monthly premium for the insurance premium *Page 877 
for the insurance applied for, then insurance under the terms of the policy applied for shall take effect on the latest of the following dates: (a) the date of the application, (b) the date of the last of any required medical examinations or (c) the policy date, if any, requested in the application.
 "Unless all of the preceding conditions are met, there shall be no liability on the part of the Company except to return this payment."
From the evidence introduced, the jury could reasonably have inferred that Palmer knew that Mrs. Strickland's height and weight were such that a medical examination was likely to be required before Washington National would determine whether or not to assume the risk of coverage; that Mrs. Strickland was relying on Palmer's representation that she was insured as of that moment and so cancelled her application for hospital insurance with another insurer based upon Palmer's representation; and that Palmer made the representation in order to make a sale, without concern for whether Mrs. Strickland received insurance coverage as of that moment as promised. All this constitutes sufficient evidence from which a jury could reasonably have inferred that the fraud was committed with an intent to deceive or defraud. Consequently, the jury's award of punitive damages was proper.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.