I concur as to parts I and II.
I concur specially as to part III, just as I concurred specially when that same issue was presented in Ensor v.Wilson, 519 So.2d 1244, 1274-75 (Ala. 1987).
If the trial court had granted a new trial for the failure of three members of the jury panel to respond correctly to questions addressed to them on voir dire, I would have voted to affirm the trial court's action. See Gold Kist, Inc. v. Brown,495 So.2d 540 (Ala. 1986). The trial court is in the best position to determine whether there was probable prejudice as a result of a juror's failure to respond to questions asked during voir dire. The trial court's application of the probable prejudice test is subject to review only for abuse of discretion. Although I want our judicial system to do all in its power to make certain that jurors speak the truth duringvoir dire, just as witnesses must during their sworn testimony (see Ex parte Frazier, 562 So.2d 560 (Ala. 1989)), in regard to a juror's failure to so respond during voir dire our standard of review is that we will not reverse and remand for a new trial unless we find that, in applying the probable prejudice test, the trial court abused its discretion. I cannot hold that the trial court abused its discretion in not granting a new trial in this case.
I concur in the result as to part IV.
The argument of Simmons's most competent counsel, in brief and at oral argument, has overwhelmingly convinced me that the conduct of General American and Foster towards Simmons on May 30, 1986, was substantially the same as that of Washington National and Palmer on January 15, 1981, towards Strickland inWashington National Insurance Co. v. Strickland, 491 So.2d 872
(Ala. 1985), a case that I authored and with which I am thoroughly familiar. In Strickland, it was stipulated that the amount of compensatory damages was $1,369.14, so $21,130.86 of the $22,500 jury award was for punitive damages. In the case at issue, the trial court instructed the jury that $10,000 was the total amount of compensatory damages that Simmons could recover. There was no objection to this. The jury awarded $2.5 million, or $2,490,000 in punitive damages.
I have examined the jury instructions on punitive damages in both cases; they were substantially the same and consisted substantially of the instruction provided for in the Alabama Pattern Jury Instructions.
For the same conduct, within a five-year period, under the same jury instruction, one jury punishes one insurance company and its special agent in the amount of $21,130.86, and another jury punishes another insurance company and its special agent in the amount of $2,490,000. Two juries punished two insurance companies for the same conduct by verdicts that differed by $2,468,869.14. One is punished by having to pay approximately 15 1/2 times the compensatory damages that it caused; the other is punished by having to pay 249 times the compensatory damages it caused. Were Washington National and its special agent, Palmer, not punished enough? Or was General American and its special agent, Foster, punished too much? Take the even, or take the odd. The method of awarding punitive damages in Alabama is procedurally defective, perhaps to the extent of being unconstitutional as a matter *Page 152 
of procedural due process, since in Alabama the constitutional right to due process applies in all civil actions as well as in criminal actions. Ross Neely Express, Inc. v. Alabama Dept. ofEnvironmental Management, 437 So.2d 82 (Ala. 1983).
Punitive damages, primarily created by the judiciary, are out of hand. Considering Washington National, I cannot hold that the trial court in this case erred when it stated that the judgment was "simply too much for the conduct of which defendants were guilty."
Juries were allowed to award punitive damages at common law prior to the ratification of the United States Constitution and the first ten amendments to that Constitution and the ratification of the first Alabama Constitution. I am still confused as to the nature of those common law punitive damages, for it appears that they may have been utilized both to compensate the victim and to punish the wrongdoer. See L. Schlueter and K. Redden, Punitive Damages, § 1.3 (2d ed. 1989). However, I cannot find, regardless of the purpose for which such damages were awarded at common law, that the common law permitted a jury's award of punitive damages to be unbridled, unrestrained, unchecked, or ungoverned; however, if it did, I believe that the Alabama Constitution required that the substantive law of punitive damages be applied through fair procedures by a tribunal hearing the case and that this process constitutionally bridled, restrained, checked, and governed a jury's right to award punitive damages and that punitive damages may be unconstitutional unless they are awarded according to proper standards set by the judiciary or the Legislature.
There was a substantial remittitur, ordered in accordance with the only standards that this Court has provided, i.e., post-verdict standards to be applied by the trial court; therefore, being pragmatic, I concur in the result.