This is an appeal from a judgment based on a jury verdict in favor of C.F. Halstead Developers, Inc. ("Halstead"), against American States Insurance Company and American Economy Insurance Company (together hereinafter referred to as "ASIC"). This judgment was made final pursuant to Rule 54(b), A.R.Civ.P. We affirm.
This declaratory action involves two liability insurance policies issued to Halstead by ASIC. ASIC sought to rescind the insurance policies on the ground that Halstead had misrepresented facts about its business activities in completing the application forms for the policy.
It is undisputed that Leon Moore, owner of Insurance Bonds, Inc., the agency that issued the insurance policies, contacted James D. Tatum, principal stockholder and chief executive officer of Halstead, regarding liability insurance coverage for a construction project, Eastwood Festival Centre ("EFC"), which was to be built on U.S. Highway 78 in Birmingham, Alabama. Halstead was employed as general contractor on other projects when Moore approached him.
Moore completed several application forms for Halstead with regard to insurance coverage for the EFC project. A policy was issued and Halstead paid the premium of $187,915.26 for insurance coverage for the period from July 1, 1987, to June 30, 1988. Before and after the application forms were completed, Moore met with Lee Keeler, ASIC's commercial underwriter, and Mildred Osborne, ASIC's underwriting manager in the commercial department, both of whom were in the Montgomery office, about "submitting a risk to [ASIC] . . . to write insurance on C.F. Halstead Developers."
Halstead and Tatum formed Eastwood Festival Associates ("EFA"), a partnership. *Page 872 
By August 27, 1987, Halstead had sold its interest in EFA to the "Paragon Group"; Paragon then employed Halstead as the "construction manager" for the EFC project. The site work contractor for the EFC project was Wright Brothers Construction ("WBC"), which hired the blasting contractor, Apache Drilling and Blasting ("ADB"). Neither of these contractors had a contractual relationship with Halstead; in addition, Halstead had no control over any part of ADB's blasting operation. Halstead served in an advisory capacity, and Paragon made the final decisions.
On March 14, 1988, there was a landslide at the EFC construction site, resulting in numerous claims for damages.
ASIC filed suit in April 1989, alleging that Halstead had failed to "disclose that [Halstead's] . . . work and operations in connection with EFC would include blastings, excavation and earth movement in a heavily populated and highly urbanized area." ASIC demanded that the contract of insurance be declared void because, it argues, Halstead allegedly made material misrepresentations on the insurance application forms with regard to two questions: "Do any operations include blasting or utilize or store explosive material?" and "Do any operations include evacuation [excavation], tunneling, underground work, or earth moving?" Halstead answered "no" to both of these questions and ASIC claims that, because of these allegedly false answers, the insurance contracts should be declared void. Moore testified that these questions are used to determine whether the insured regularly performs blasting operations or excavation work.
Halstead alleges that the questions are ambiguous and that Halstead interpreted the questions to mean: "Do any of Halstead's operations include blasting or excavation?" Halstead claims that, based on that reading of the questions, its answers were true. Halstead was not involved in any blasting or excavation work, and Halstead did not enter into any contracts with anyone to perform this kind of work.
Ambiguous language in an insurance contract must be construed liberally in favor of the insured and strictly against the insurer. National Union Fire Ins. Co. v. City of Leeds,530 So.2d 205, 207 (Ala. 1988).
The following written interrogatory was submitted to the jury:
 "Is the insurance policy issued by American States Insurance Company to Halstead Developers, Inc. for the period from July 1, 1987, to June 30, 1988, due to be declared null, void and unenforceable?"
The jury answered "no" to this question. ASIC moved for a new trial and the trial court denied the motion.
"When the evidence is in dispute, the general rule is that a jury verdict is entitled to a strong presumption of correctness." Northeast Alabama Regional Medical Center v.Owens, 584 So.2d 1360 (Ala. 1991).
 "We [not only] presume that the verdict was correct; [but also] we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987). Furthermore, "this presumption [of correctness] is strengthened when the trial court denies a motion for new trial." Alfa Mut.Ins. Co. v. Northington, 561 So.2d 1041, 1048 (Ala. 1990).
In Campbell v. Burns, this Court stated that it
 "will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that . . . [that evidence] clearly indicates that the jury's verdict was wrong and unjust."
ASIC claims that Moore was an independent insurance agent and that he had no authority to issue insurance policies on behalf of ASIC on his own initiative. Halstead contends that Moore was a general agent of ASIC.
An agent, by definition, is a "person authorized by another [principal] to act for or *Page 873 
in place of him." Black's Law Dictionary 63 (6th ed. 1990). "The question of the existence and scope of a principal-agent relationship is normally [one] of fact to be determined by the jury." Calvert v. Casualty Reciprocal Exchange Ins. Co.,523 So.2d 361, 362 (Ala. 1988).
This Court has described a "general agent" as one with "full power to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks" and one who "'stands in the shoes' of the principal for the purpose of transacting business entrusted to him." Washington National Ins. Co. v.Strickland, 491 So.2d 872, 874 (Ala. 1985). This Court also stated that the jury in that case could have properly found that the insurer was a "general agent" and was liable for the agent's representations based on the following evidence: the insurance agent was a "licensed agent" of the insurer as indicated by "[c]opies of [his] . . . Alabama Department of Insurance license and license application" which designated "agent" on the form; in addition, the insurer "provided [him] with applications, sales literature, and instructions." Id. at 876.
In the present case, ASIC had executed an "agency contract" agreement with Moore, giving him authority to bind ASIC. ASIC annually renewed Moore's Alabama Department of Insurance license. ASIC required Moore to use its forms, instructions, and code books. ASIC billed Halstead through Moore, who delivered the insurance policies and received the premiums. Furthermore, Moore testified that he was authorized by his contract with ASIC to solicit Halstead's business and that he is still an agent for ASIC.
The general rule is that "[a]n insurance company is bound by knowledge of, or notice to, its agent within the general scope of his authority." 44 C.J.S. Insurance § 154 at 827 (1945).
 "[A] policy is not avoided if the insurer knows the facts, or the falsity of the statements, or has sufficient indications that would put a prudent person on notice so as to induce inquiry which, if done with reasonable thoroughness, would reveal the truth."
Reliance Ins. Co. v. Substation Products Corp., 404 So.2d 598,604 (Ala. 1981).
We agree with the jury's finding that the insurance policies in question were valid and in effect on March 14, 1988. The facts indicate that when Moore negotiated the insurance policies to Halstead he was acting as ASIC's agent; thus, Moore's actions are imputed to ASIC and any negligence on Moore's part in the application process is ASIC's negligence. Furthermore, ASIC's allegation that Halstead made material misrepresentations on the application forms was never proven at trial.
ASIC also claims that the trial court committed prejudicial error in refusing to give to the jury its requested charges number 6, 7, 8, 9, and 10.
The trial court's refusal of ASIC's requested written jury charges was not preserved for appellate review. A party waives possible error as to the trial court's oral jury charge by failing to specifically object and to state the grounds for the objection. Ala.R.Civ.P. 51. In Owens, supra, this Court stated:
 "In order for a party to preserve for review an error in the [trial] court's failing to give a certain jury instruction, it must make a timely objection and must state the grounds with sufficient clarity and specificity to call the error to the court's attention. Ala.R.Civ.P. 51; Coleman v. Taber, 572 So.2d 399 (Ala. 1990); McElmurry v. Uniroyal, Inc., 531 So.2d 859 (Ala. 1988). . . ."
 "While we recognize that the rule does not require undue technical specificity, this '[reservation of] an exception' to the trial court's oral instructions was too general to give the trial court an opportunity to correct any errors that it may have made."
584 So.2d at 1364.
In this case, ASIC made a similar general objection at the end of the court's oral jury charges. In addition, the following colloquy took place: *Page 874 
 "MR. LAMAR [ASIC's counsel]: Did your honor get my, I think I submitted 13 written charges.
"THE COURT: Yeah, I've denied the charges.
 "MR. LAMAR: Okay. And I just wanted to resubmit those and except to Your Honor's not giving those for the record.
"THE COURT: All right."
Because ASIC did not state with sufficient clarity and specificity its objections to the trial court's failure to give the requested jury charges, we can not reverse for this alleged error. Ala.R.Civ.P. 51.
ASIC also claims that the trial court committed prejudicial error in refusing to permit a witness, Mildred Osborne, to testify as to whether she would have issued the policy to Halstead if she had known that Halstead was a "general contractor."
We find that the trial court properly sustained Halstead's objection to this testimony. Osborne lacked the authority to answer these questions or to approve "the property aspect" of the package of policies at issue. Keeler testified that no one in the Montgomery office had the power to issue the policy to Halstead. In addition, Osborne stated that she did not see the insurance applications until after the policies were issued. Furthermore, the source of Osborne's information was ASIC's own agent, Leon Moore.
We hold, therefore, that the Jefferson Circuit Court correctly decided that the insurance contracts were not "due to be declared null, void and unenforceable."
Because of our holding above, we need not address the issues of fraud and proximate causation.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON and INGRAM, JJ., concur.