I respectfully dissent, and, in explaining my reasons for dissenting, I think it helpful to discuss the facts of this case in additional detail.
The record indicates that in November 1986, Broadus approached Van Antwerp about procuring insurance coverage for Broadus's construction business. Broadus testified that he stressed in his conversations with Van Antwerp that he wanted "complete and total coverage" for "anything that might happen." According to Broadus, Van Antwerp indicated that he would obtain this type of coverage.
Van Antwerp contacted The Insurance House about locating coverage for Broadus. The Insurance House obtained premium "quotes." These quotes were relayed to Van Antwerp, who relayed them to Broadus. Ultimately, Broadus obtained limited coverage from Essex Insurance Company.
Van Antwerp testified that he never misled Broadus as to the extent of coverage with Essex and that Broadus wanted the cheapest coverage he could get.
In January 1989, while Broadus was engaged in erecting a communications tower, a construction accident resulted in approximately $18,200 damage to the tower.
Essex denied coverage, citing a policy exclusion for damage to property in Broadus's "care, custody and control."
Broadus sued Van Antwerp, The Insurance House, and Essex, averring in pertinent part, that Van Antwerp had misrepresented the extent of coverage with Essex, as an agent of The Insurance House, rendering the Insurance House vicariously liable under the doctrine of respondeat superior. He averred further that The Insurance House's liability rendered Essex liable also, because The Insurance House was, he claimed, a general agent of Essex — he claimed The Insurance House "was Essex." In this regard, Broadus correctly states on appeal that "a general agent 'stands in the shoes' of the principal." WashingtonNational Ins. Co. v. Strickland, 491 So.2d 872, 874 (Ala. 1985).
As stated by the majority, the trial court entered summary judgments in favor of Essex and the Insurance House.
A summary judgment is improper where there are genuine issues of material fact. Ala.R.Civ.P. 56; Berner v. Caldwell,543 So.2d 686 (Ala. 1989). The burden of establishing the absence of a genuine issue of material fact is on the movant. Id. If the movant makes a prima facie showing that there is no genuine issue of material fact, and that the movant is entitled to a judgment as a matter of law, then the burden shifts to the nonmovant, who must rebut this showing by "substantial evidence" creating a genuine issue of material fact. Id. In determining whether a nonmovant has produced substantial evidence, the Court must view the evidence in a light most favorable to the nonmovant, resolving all reasonable doubts in the nonmovant's favor. *Page 262 Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986).
In my view, Broadus presented, in rebuttal to the defendants' prima facie showing, substantial evidence in support of his claim that Van Antwerp was an agent of The Insurance House and substantial evidence that The Insurance House was a general agent of Essex.
As to whether Van Antwerp was an agent of The Insurance House, I note that "[t]he test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance," Carlton v. Alabama Dairy Queen, Inc.,529 So.2d 921, 923 (Ala. 1988), whether that right is "exercised or not."Joseph Land Co. v. Gresham, 603 So.2d 923 (Ala. 1992).
Broadus argues that he presented substantial evidence that Van Antwerp was a soliciting agent of The Insurance House. A "soliciting agent" is an agent with limited authority to act for the principal. Land Associates, Inc. v. Simmons,562 So.2d 140, 144 (Ala. 1989). This Court has stated that "[s]ince a soliciting agent is regarded as the 'servant' of the insurer 'master,' the insurer has the full right of control over the agent's actions." Id., quoting Strickland, 491 So.2d at 875.
In this regard, the record indicates that The Insurance House frequently directed Van Antwerp in his activities relating to Broadus. For example, Carol Freeman, of The Insurance House, instructed Van Antwerp to provide her with Broadus's correct payroll, to perform a loss history on Broadus, to supply her with financial audit information, and to verify the figures on payroll information already submitted. She also directed him to do the following: "Please have the enclosed application completed and signed by the insured on or before March 15, 1989. Please be sure to indicate a complete description of operations, including maximum heights." In another communication she wrote: "Please rush renewal applications to me — give me a list of the jobs done this past year, including a description of the job, plus contract costs. Please get [it] to me ASAP. . . ." Also, in a memo marked "IMPORTANT," The Insurance House wrote to Van Antwerp: "It is essential that the enclosed endorsement be signed by the insured no later that 6/87 to avoid cancellation of the policy."
Viewing the evidence most favorably to Broadus, one could reasonably infer that The Insurance House retained a right of control over the manner of Van Antwerp's performance. It is notable in this regard that the record indicates a pattern by Van Antwerp of acting only after receiving specific instructions or approval from The Insurance House.
In my view, one might also reasonably infer that The Insurance House was a general agent of Essex.
 "A 'general agent' is one who has authority to transact all of the business of the principal, of a particular kind, or in a particular case. [Citation omitted.] The powers of such an agent are coextensive with the business entrusted to his care, authorizing him to act for the principal in all matters coming within the usual and ordinary scope and character of such business. . . . Since a general agent's powers are coextensive with the business entrusted to him, his fraudulent act is the fraudulent act of his insurer principal as well."
Strickland, 491 So.2d at 874.
Van Antwerp testified that he had no direct dealings with Essex, but worked through The Insurance House. The evidence indicates that Essex empowered The Insurance House to prepare and to issue the Broadus policy. The evidence also indicates that The Insurance House, in Essex's stead, sought remittance for the coverage and also conducted all communications with Van Antwerp relating to the Essex policy. Van Antwerp testified that he never spoke with anyone from Essex.
The Court stated in American States Ins. Co. v. C.F. HalsteadDevelopers, Inc., 588 So.2d 870, 872-73 (Ala. 1991), "An agent, by definition, is a 'person authorized by another [principal] to act for or in place *Page 263 
of him.' " (Quoting Black's Law Dictionary 63 (6th ed. 1990)). It appears from the record that Essex so empowered The Insurance House in this case. The evidence certainly permits one to reasonably infer that The Insurance House had the "authority to transact all of the business of [Essex], of a particular kind." Strickland, 491 So.2d at 874. Such authority is the authority of a general agent.
Also, I note Van Antwerp's testimony that the Insurance House was a "general agent" and documentation listing The Insurance House as the "general agent" of Essex. Although this evidence would properly be ruled inadmissible, no objection to its consideration in opposition to the summary judgment motion was raised in the trial court. Thus, any objection to the Court's consideration of it is waived. McMillian v. Wallis,567 So.2d 1199, 1205 (Ala. 1990).
"The existence and scope of a principal-agent relationship [are] normally [questions] of fact to be determined by the jury." Continental Elec. Co. v. American Employers' Ins. Co.,518 So.2d 83, 87 (Ala. 1987). In my view, this case presents such questions.
SHORES, J., concurs.