852 So.2d 123 (2002)
Susan A. STEVENS
v.
Uta PHILLIPS.
1010976.
Supreme Court of Alabama.
December 6, 2002.
*124 G. Houston Howard II of Howard, Dunn, Howard & Howard, Wetumpka, for appellant.
*125 Patrick C. (Rick) Davidson and Matthew W. White of Adams, Umbach, Davidson & White, L.L.P., Opelika, for appellee.
MADDOX, Retired Justice.
The issue in this case is whether the trial judge erred in compelling the plaintiff, the purchaser of a manufactured home, to arbitrate the claims made in her complaint in which she named a single defendant, the salesperson of the manufactured home, who was also the general sales manager of the dealership, on the ground that the salesperson did not sign the arbitration agreement in her individual capacity, as the salesperson, but instead signed it in her representative capacity as the general sales manager of the dealership.
To decide the issue presented in this case, this Court must determine, in view of the particular facts of this case: (1) whether the defendant, who, the plaintiff claims, did not sign the agreement in her individual capacity, has standing to enforce the arbitration agreement; (2) if so, whether the transaction involving the sale and financing of the manufactured home had a substantial affect on interstate commerce; and (3) whether the arbitration agreement was unenforceable because (a) it imposed on the consumer the costs of the arbitration process; (b) the agreement was not disclosed in a written warranty; and (c) the agreement violated the due-process protocol of the American Arbitration Association.

Facts
Susan A. Stevens purchased a manufactured home from Southern Investment Corporation d/b/a Southern Homes, Inc. ("Southern Homes"), 1900 Columbus Parkway, Opelika, on or about December 13, 2000. It is undisputed that Stevens was a resident of Alabama at the time of the sale and that Southern Homes was an Alabama corporation, and that the defendant, Uta Phillips, was the general sales manager of Southern Homes and was also the salesperson of the manufactured home that Stevens bought. Indies House Manufactured Homes, the manufacturer of the home, was an Alabama corporation, and the home was manufactured in Hackleburg, Alabama, although there was evidence indicating that many of the materials used in the construction of the manufactured home came from out of state.
At the time Stevens purchased the manufactured home, she executed at least two arbitration agreements. One agreement was a stand-alone arbitration agreement, which is attached to this opinion as an appendix.[1] On the date of purchase, Stevens also executed a document entitled, "Alabama Retail Installment Contract, Security Agreement, Waiver of Trial by Jury, and Agreement to Arbitration or Reference or Trial by Judge Alone" ("the contract"), which, in pertinent part, includes the following provisions:

"ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:
"a. Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this contract, including any claim based on or arising *126 from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversies shall be determined by judicial reference of the controversy to a referee appointed by the Judge or, if the Court where the controversy is venued lacks the power to appoint a referee, by trial by a Judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY IS DECIDED BY ARBITRATION, BY JUDICIAL REFEREE, OR BY TRIAL BY A JUDGE.
"b. Arbitration. Since this contract touches and concerns Interstate Commerce, an arbitration under this contract shall be conducted with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice...."
(Capitalization and bold in original.) The following terms are defined at the beginning of the contract: "`I,' `me,' `myself,' or `my' mean[s] all persons who sign this Contract as buyer or co-buyer, jointly and severally, and `you' or `your' mean[s] the Seller and any assignee." The arbitration provision in the contract and the stand-alone arbitration agreement are hereinafter sometimes referred to together as "the arbitration agreement."
On or about February 26, 2001, Stevens sent Phillips a letter regarding the condition of the manufactured home she had purchased. In the letter, she demanded that certain repairs be made to the home and she also demanded money damages for various problems relating to the condition of her home. On or about March 15, 2001, before Stevens filed this action, Southern Homes filed a "Demand for Arbitration" with the American Arbitration Association seeking to arbitrate the claims Stevens made in her letter. On or about March 23, 2001, Stevens filed this action against Phillips individually.
Stevens's complaint contained three counts: Count I alleged that Phillips was guilty of misrepresentation, in that Phillips represented to her that the sale of the home would include "furniture and a deck and that the home would be delivered, installed, and ready for occupancy by December 19, 2000," that "[t]he defendant further promised and represented to her that any problems in the home would be promptly repaired, within twenty-four hours in the case of leaks," and that "[t]he defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff"; count II alleged promissory fraud, averring that Phillips, when she made the promise that the home would include furniture and a *127 deck, had no intent to provide the furniture and a deck as a part of the bargain they had made; and count III claimed that the arbitration agreement, which Stevens admitted she signed, "permitted the purchaser and the salesperson to also agree to arbitrate disputes between themselves," but that "[t]he defendant Uta Phillips, who was the salesperson, never executed the agreement to arbitrate disputes with plaintiff," and that "[b]y filing this complaint, the plaintiff does hereby [revoke her offer] to arbitrate disputes with the defendant, Uta Phillips."
With respect to counts I and II, Stevens, although not naming Phillips's employer, Southern Homes, as a party, nevertheless included allegations relating to Southern Homes, as follows:
"With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed [her] or continued to employ [her] or continued to use [her] services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer."
This paragraph appeared in both counts I and II of Stevens's complaint.
On or about April 25, 2001, Phillips filed a motion to compel arbitration. In an affidavit submitted in support of her motion, she stated that Stevens's purchase of the manufactured home "was financed through Green Point Credit Company, which is headquartered in Cincinnati, Ohio," and that "[t]he actual sales documents and credit approval came from Green Point Credit in Pensacola, Florida." Phillips also attached to her affidavit documents that she averred were "maintained in the files of Southern Homes in the normal course of business"; one of those documents was the contract signed by Stevens and Phillips, who signed in her representative capacity for Southern Homes, the pertinent provisions of which have already been quoted.
Phillips also filed an affidavit made by Tony Capasso, the controller for Indies House Manufactured Homes, who stated that, based upon the records of the company, "the home purchased by Ms. Stevens would be constructed with materials purchased and paid for through Interstate Commerce in excess of $14,000."
Although the trial judge initially denied Phillips's motion to compel arbitration on December 18, 2001, Phillips filed a motion to reconsider the denial and a second motion to compel arbitration on January 11, 2002; she attached as an exhibit the stand-alone arbitration agreement, attached to this opinion as an appendix. After considering Phillips's submission and Stevens's response, the trial court rescinded its December 18, 2001, order denying Phillips's motion to compel arbitration and entered the following order, compelling Stevens to arbitrate her claims against Phillips:
"On January 11, 2002, the Defendants filed a Motion entitled `Motion to Reconsider Denial of the Defendants' Motion to Compel Arbitration and Defendants' Second Motion to Compel Arbitration.' The Court has reviewed two cases directly on point: Ex parte Gray, 686 So.2d 250 (Ala.1996), and Monsanto Company v. Benton Farm, 813 So.2d 867 (Ala.2001). The Monsanto case involved the sale of cottonseed and the lawsuit was filed in Lowndes County, Alabama, against various entities including Dixie Agricultural Supply `DAS.' *128 The Plaintiffs had executed an Arbitration Agreement with DAS. They also sued an employee of DAS, named Smith. The Circuit Court granted DAS's Motion to Compel Arbitration but denied Smith's Motion to Compel Arbitration. Smith appealed. Smith argued that under the authority of Ex parte Gray, 686 So.2d 250, 251 (Ala.1996), `he should be able to compel arbitration of the plaintiffs' claims against him, as a nonsignatory, because he was an agent of DAS, the only defendant whose motion to compel arbitration was granted.' [813 So.2d at 873.] Justice Harwood, writing for the majority, agreed, stating:
"`The plaintiffs' claim against DAS and Smith arise out of the same circumstances, i.e., Smith's representations, made while he was acting as an agent of DAS and within the scope of his employment with DAS, concerning the sale of Technology Cottonseed to the plaintiffs....'
"[813 So.2d at 874.] The Alabama Supreme Court went on to hold that Smith stood in the shoes of his principal, not only as to the question of liability, but also to the question of coverage of the Arbitration Agreement used by DAS in the sale to the plaintiffs. In Ex parte Gray, the Plaintiff's suit arose out of the sale of an automobile. The Plaintiff had executed an Arbitration Agreement with the dealership. In order to avoid arbitration the Plaintiff only sued the salesman, Gray, and not the dealership. The Supreme Court held that a party should not be able to avoid arbitration by merely suing an employee of the principal.
"It is the Court's opinion that the Court's Order dated December 18, 2001, should be rescinded and that the Defendants' Motion to Compel Arbitration is due to be GRANTED."

Standard of Review
In BankAmerica Housing Services v. Lee, 833 So.2d 609 (Ala.2002), this Court stated:
"This Court's review of an order granting a motion to compel arbitration is de novo. See W.D. Williams, Inc. v. Ivey, 777 So.2d 94 (Ala.2000); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999). Therefore, this Court must determine `whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999)."
833 So.2d at 617.

I.
Stevens primarily argues that the arbitration agreement attached as an appendix to this opinion is unenforceable in this case because, she argues, the agreement did not cover "agents and employees," but, in fact, contained a specific provision relating to disputes between the purchaser and the salesperson, and Phillips failed to sign this provision as the salesperson. Consequently, Stevens argues, Phillips lacks standing to compel arbitration because she did not sign the agreement in her individual capacity, on the line marked "Salesperson."
Phillips counters this argument by contending that she, as the selling agent for Southern Homes, is entitled to enforce arbitration. In support of her argument, she relies on the two cases the trial court relied on in compelling Stevens to arbitrage her disputeEx parte Gray, 686 So.2d 250 (Ala.1996), and Monsanto Co. v. Benton Farm, 813 So.2d 867 (Ala.2001). In Ex parte Gray, Gray, a customer of an automobile dealership, sued the dealership and the salesman. The trial court issued an order staying the action pending arbitration, and the customer petitioned this Court for a writ of mandamus vacating *129 that order.[2] This Court denied the petition, holding that Gray was compelled to arbitrate his complaints against both the dealership and the salesman, even though the agreement containing the arbitration provision was signed only by the customer and the dealership. The arbitration provision included in the "Retail Buyer's Order" Gray signed read as follows:
"I hereby acknowledge and agree that all disputes and controversies of every kind and nature between myself and Crown Pontiac Nissan, Inc., arising out of or in connection with the purchase of this vehicle by me, will be resolved by arbitration in accordance with the procedure set forth in this Retail Buyer's Order."
686 So.2d at 251. This Court, in denying the petition for the writ of mandamus, stated:
"As the trial court noted in its order compelling arbitration, the thrust of Gray's complaint against Crown and Pardue [the salesman] is that Pardue, as Crown's agent, while acting within the line and scope of his agency, falsely represented the condition of the vehicle Gray was buying. Clearly, Gray's claim comes within the arbitration agreement, and that agreement is binding upon all the parties and is enforceable under the controlling law. See Ex parte Gates, 675 So.2d 371 (Ala.1996); and see Paine, Webber, Jackson & Curtis, Inc. v. McNeal, 143 Ga.App. 579, 239 S.E.2d 401 (1977) (holding that an employee an account representativeof Paine, Webber, who was not a signatory to the contract containing the arbitration agreement, was entitled to the benefit of that agreement). A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal."
686 So.2d at 251 (emphasis added).
In Monsanto, this Court discussed the rights of a salesperson to "stand in the shoes" of the employer and enforce arbitration, even though the salesperson was a nonsignatory to the arbitration agreement. In that case, which involved facts similar to the facts of this case, this Court reviewed the law relating to the right of a nonsignatory to enforce an arbitration agreement. This Court stated:
"Smith argues that under the authority of Ex parte Gray, 686 So.2d 250, 251 (Ala.1996), he should be able to compel arbitration of the plaintiffs' claims against him, as a nonsignatory, because he was an agent of DAS, the only defendant whose motion to compel arbitration was granted.
"In Gray, the plaintiff sued an automobile dealership and its salesperson, alleging fraud. The plaintiff did not dispute that the dealership could compel arbitration, based on the agreement he had signed with the dealership, but he argued that the salesperson was not entitled to enforce arbitration because the salesperson was not a signatory to the arbitration contract. This Court held that because the plaintiff's claim was based on the allegation that the salesperson had been acting within the line and scope of his agency at the time the allegedly false representations were made, that claim was covered by the arbitration agreement with the dealership. The Court stated, `A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal.' 686 So.2d at 251.

*130 "Implicit in the Gray opinion is the settled rule of agency that an agent `stands in the shoes' of his principal. See American States Ins. Co. v. C.F. Halstead Developers, Inc., 588 So.2d 870 (Ala.1991). Thus, an agent who has incurred liability for his principal by acting in the line and scope of his employment also `stands in the shoes' of his principal with respect to the principal's rights in the transaction. This rationale is succinctly stated in Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir.1993):
"`Under traditional agency theory, she [the nonsignatory agent] is subject to contractual provisions to which MLPF & S [the principal] is bound. Barrowclough [v. Kidder, Peabody & Co., Inc.], 752 F.2d [923] at 938 [(3d Cir.1985)]. Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. See, Arnold v. Arnold Corp., 920 F.2d 1269, 1281-82 (6th Cir.1990); Letizia v. Prudential Bache Securities, 802 F.2d 1185, 1187-88 (9th Cir.1986).'
"This Court has applied a comparable analysis not only in Gray, but also in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), and Ex parte Isbell, 708 So.2d 571 (Ala.1997). See also, Georgia Power Co. v. Partin 727 So.2d 2 (Ala. 1998).
"In the present case, the plaintiffs' claims against DAS and Smith arise out of the same circumstances, i.e., Smith's representations, made while he was acting as an agent of DAS and within the line and scope of his employment with DAS, concerning the sale of the Technology Cottonseed to the plaintiffs. The trial court has already ordered the plaintiffs to arbitrate their claims against DAS, and the plaintiffs did not appeal that order. Ordering Smith, DAS's agent, to a trial on the same facts and legal theories would be anomalous. Under the circumstances of this case, Smith `stands in the shoes' of his principal, DAS, not only as to the question of liability, but also as to the question of the coverage of the arbitration provision used by DAS in the sales to the plaintiffs. Gray and McDougle, supra. The trial court's orders are therefore due to be reversed insofar as they relate to Smith."
813 So.2d at 873-74.
In a special concurring opinion in Monsanto, Justice Johnstone disagreed with some of the rationale in the majority opinion in Monsanto, but stated, with regard to Smith's right to compel arbitration:
"I agree, however, that the specialized rule of Ex parte Gray, 686 So.2d 250 (Ala.1996), accords the agent Smith in the case before us the same arbitration rights as his principal Dixie Agricultural Supply, which has won an unappealed order compelling arbitration. Compare Auvil v. Johnson, 806 So.2d 343 (Ala. 2001) (no right to compel arbitration accorded to a non-signatory agent whose signatory principal lost its motion to compel arbitration and did not appeal the denial (no intertwining without two threads to twine together)). Therefore I concur in the judgment of this Court reversing the denial of Smith's motion to compel arbitration."
813 So.2d at 875 (Johnstone, J., concurring in cases no. 1000900, no. 1000901, and no. 1000902, and concurring in the judgment and in the rationale in part in case no. 1000903).
Although unlike Monsanto, no order in this case compels Stevens to arbitrate her claims against Southern Homes, it is undisputed that, on or about March 15, 2001, *131 before Stevens filed this action, Southern Homes filed a "Demand for Arbitration" with the American Arbitration Association regarding the claims made by Stevens in her letter. In count I and count II, Stevens alleged in paragraphs 8 and 13, respectively:
"With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed [her] or continued to employ [her] or continued to use [her] services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer."
Stevens, however, did not make Southern Homes a defendant or take any action, insofar as we can tell from the record before us, regarding the arbitration proceeding or the allegations she made in the paragraph quoted above.
Based on the record before us, which contains two arbitration agreements executed by Stevens, it appears that Stevens's claims against Phillips arise out of representations allegedly made by Phillips, while she was acting as an agent within the line and scope of her employment with Southern Homes; therefore, we hold that under the circumstances presented by this case, Phillips "stands in the shoes" of her principal.

II.
Stevens further argues that even if Phillips can claim the benefits under the arbitration provision Phillips failed to carry her burden of showing that the transaction substantially affected interstate commerce. See American Gen. Fin., Inc. v. Morton, 812 So.2d 282, 284-85 (Ala.2001)("The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce.").
As we have already pointed out, Phillips, in an effort to carry her burden of showing that Stevens's purchase of the manufactured home substantially affected interstate commerce, filed two affidavits. One of those affidavits was by Tony Capasso, the controller for Indies House Manufactured Homes, who stated that, according to the records of that company, "the home purchased by Ms. Stevens would be constructed with materials purchased and paid for through Interstate Commerce in excess of $14,000." The other affidavit was by Phillips; it stated that the manufactured home was financed through Green Point Credit Company, which is headquartered in Cincinnati, Ohio, and that the actual sales documents were prepared by and the credit approval was sought from Green Point Credit in Pensacola, Florida.
This evidence was sufficient to show that the transaction substantially affected interstate commerce. In Ex parte Thicklin, 824 So.2d 723 (Ala.2002), this Court, quoting Southern Energy Homes, Inc. v. McCray, 788 So.2d 882 (Ala.2000), stated, "`An Alabama resident's purchase of a new mobile homeeven one manufactured in Alabamacan be a transaction that substantially affects interstate commerce....' 788 So.2d at 883 (footnote omitted)." In Ex parte Thicklin, this Court discussed the evidence presented in that case to show that the sale of the manufactured home involved interstate commerce, as follows:

*132 "Riverchase and Fantasy presented evidence concerning the effect on interstate commerce of Thicklin's purchase of her mobile home. An affidavit provided by Fantasy's sales manager states, in pertinent part:
"`4. The mobile home purchased by Ms. Thicklin was manufactured by defendant Riverchase/Cavalier, an Alabama corporation. [Fantasy] purchases manufactured homes for resale from at least one foreign corporation that ships their products into Alabama from out-of-state locations. [Fantasy] frequently orders home decorations from a Georgia company to be shipped and delivered to [Fantasy's] location in Alabama.
"`5. The mobile home purchased by Ms. Thicklin was financed by an entity located out-of-state, Bombadier Capital, whose lienholder address is in Cincinnati, Ohio. [Fantasy] sent Thicklin's finance paperwork to Bombadier Capital's Jacksonville, Florida office.'
"An affidavit provided by Riverchase's sales manager states, in pertinent part:
"`Cavalier Manufacturing, Inc. is a Delaware corporation with its principal place of business in Winston County, Alabama. Riverchase Homes is a division of Cavalier Manufacturing, Inc. Riverchase Homes is a manufacturer of manufactured housing. Riverchase Homes does not sell homes directly to the retail customer. Riverchase Homes sells homes to retailers, who then sell the homes to the ultimate consumer.
"`Riverchase Homes provides a limited warranty with each home. Those homes sold by Riverchase Homes are transported by independent common carrier. A copy of the warranty is transported with each home.
"`Riverchase Homes manufactures homes in Marion County, Alabama. Riverchase Homes has suppliers around the country. Component parts of each home are transported by supplier via interstate commerce. Each home built by Riverchase Homes contains component parts transported by interstate commerce. In addition, appliances are supplied in each home. The appliances are purchased from manufacturers. Some, if not all, of these appliances are shipped to Riverchase Homes from other states.'
"We conclude that the evidence in this case indicates that Thicklin's purchase of her mobile home was a transaction that substantially affected interstate commerce. Therefore, the [Federal Arbitration Act] applies to this transaction."
824 So.2d at 727-28. In McCray, supra, cited in Ex parte Thicklin, the evidence established that, although Southern Energy manufactured mobile homes in Alabama, the funds it used to conduct its business came from banking institutions located outside of Alabama and many of the parts incorporated into the mobile homes were acquired from suppliers outside of Alabama and were shipped in interstate commerce to Southern Energy's plant in Alabama. 788 So.2d at 883 n. 1.
Although there is less evidence in this case showing that the transaction substantially affected interstate commerce than there was in Ex parte Thicklin and McCray, we conclude, as this Court did in Ex parte Thicklin, that the evidence indicates that Stevens's purchase of her manufactured home was a transaction that substantially affected interstate commerce. Therefore, we find that the Federal Arbitration Act applies to this transaction.

*133 III.
Stevens argues (1) that the arbitration agreement in this case "covers all warranty disputes concerning the manufactured home, and it expressly provides that the `purchaser, retailer, manufacturer or lender' may invoke the provision [but] is not disclosed in any written warranty" (Stevens's brief, p. 21); and (2) that the arbitration agreement is unenforceable because it violates the consumer's due-process protocol of the American Arbitration Association.
Stevens contends that "[i]n Ex parte Thicklin, [824 So.2d 723 (Ala.2002) ], the court held that the failure to disclose the arbitration provision in the warranty rendered the provision unenforceable as to any express-warranty and Magnuson-Moss claims." (Stevens's brief, p. 21.) She claims that the "provision requiring [Stevens] to arbitrate express-warranty and Magnuson-Moss disputes violates the Magnuson-Moss Act," and that "[u]nlike the arbitration provision in Thicklin, however, the present arbitration provision contains no severability clause." (Stevens's brief, p. 21.)
We believe that this Court's holding in Ex parte Thicklin is as broad as Stevens suggests. The plaintiff in Ex parte Thicklin sought to vacate an order of the trial court compelling arbitration of her claims against the seller and manufacturer of a mobile home for breach of warranty, violation of the Magnuson-Moss Warranty-Federal Trade Commission Act, negligence, and fraud.[3] In Ex parte Thicklin, this Court did hold that the plaintiff could not be compelled to arbitrate her express-warranty and Magnuson-Moss claims, because the arbitration clause was not contained in a written warranty, but that Thicklin could be required to arbitrate her other claims. Likewise, Stevens can be compelled to arbitrate her claims against Phillips, because those claims are not warranty claims but are "other claims."
Regarding Stevens's alternative argument that the arbitration agreement was unenforceable because it violated "the consumer due process protocol of the American Arbitration Association" (Stevens's brief, p. 23), this Court, in Ex parte Thicklin, discussed a similar claim:
"We recognize that certain of Thicklin's claims remain arbitrable and that pursuant to her contract the [American Arbitration Association's] Commercial Rules will govern those claims. Thicklin points to several examples in support of her argument that the arbitration clause is unconscionable, and, therefore, unenforceable, because, she says, it fails to satisfy minimum standards of procedural fairness for consumer transactions. The filing fee under the Commercial Rules, she says, is approximately $2,000, while filing a lawsuit costs approximately $200. Furthermore, she says, the arbitration clause in her contract does not disclose any of the basic information regarding the arbitration process required by the Due Process Protocol. However, Thicklin does not provide any evidence, such as her income, her family's expenses, or the estimated costs of the arbitration procedure, that would support an argument that the use of the Commercial Rules renders the arbitration *134 clause unconscionable from a financial standpoint. The United States Supreme Court has said that `[t]he "risk" that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.' Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). That risk here is also too speculative to justify a conclusion that requiring Thicklin to arbitrate the remainder of her claims (i.e., all claims other than her express-warranty and Magnuson-Moss Act violation claims) would be unconscionable. See also Palm Harbor Homes, Inc. v. Turner, [796 So.2d 295 (Ala.2001)]."
824 So.2d at 735.
In Ex parte Thicklin, Justice See, in a special concurrence, wrote the following on the issue of unconscionability:
"This Court established in Green Tree Financial Corp. v. Vintson, 753 So.2d 497 (Ala.1999), that the unconscionability of an arbitration clause is a question of law for the court and that the party claiming that such a clause is unconscionable bears the burden of proof. This Court has also held that `agreements to arbitrate are not in themselves unconscionable.' Ex parte McNaughton, 728 So.2d 592, 598 (Ala.1998). Moreover, fundamental concepts of contract law require courts to uphold contracts when possible.
"In Wilson v. World Omni Leasing, Inc., 540 So.2d 713 (Ala.1989), this Court stated:
"`Comment (1) of the official comments to § 7-2-302 sets out the basic test to determine unconscionability:
"`"[W]hether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power."'
"540 So.2d at 716.
"In Ex parte Napier, 723 So.2d 49 (Ala.1998), this Court noted:
"`[M]atters that could be germane to a determination of unconscionability [include] a refusal of [the plaintiff's] request for assistance after she had notified someone that she was unable to see or to understand [the arbitration clause]; [the plaintiff's] inability to obtain the product made the basis of this action from this seller, or from another source, without having to sign an arbitration clause; the oppressiveness or unfairness of the mechanism of arbitration; or the [unfairness] of a discount or other quid pro quo in exchange for [the plaintiff's] accepting an arbitration agreement.'
"723 So.2d at 52 (footnote omitted)."
824 So.2d at 737-38 (footnotes omitted).
Based on the record before us and the above-cited authorities, we conclude that the trial court did not err in compelling Stevens to arbitrate her claims against Phillips. It is undisputed that Southern Homes, on March 15, 2001, instituted arbitration proceedings with the American Arbitration Association; the brief filed on behalf of Phillips on this appeal states:
"In the case at hand, Southern Homes has paid the cost of the filing fee with the American Arbitration Association, and said proceeding has been stayed pending the resolution of this appeal. Plaintiff's other costs in prosecuting her *135 claims should be no different in arbitration, if not less, than in civil litigation in the Circuit Court of Lee County, Alabama."
(Phillips's brief, p. 35.) Stevens, in her reply brief, does not dispute or address this statement made in Phillips's brief, or call our attention to evidence in support of her claim that the arbitration agreement in this case is unconscionable because it violates her due-process rights as a consumer. As previously stated, her main argument is that Phillips, in her individual capacity, was a nonsignatory and therefore could not compel arbitration, and that, even if we determined that Phillips had standing, the sale of the manufactured home did not substantially affect interstate commerce.

IV.
Based on the foregoing, we hold that the trial court did not err in compelling Stevens to arbitrate her claims against Phillips.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
HOUSTON, SEE, BROWN, WOODALL, and STUART, JJ., concur.
LYONS, JOHNSTONE, and HARWOOD, JJ., concur in the result.
MOORE, C.J., dissents.
JOHNSTONE, Justice (concurring in the result).
The record discloses that the plaintiff is, in fact, pursuing against the signatory dealer before the arbitrator essentially the same claims the plaintiff is pursuing against the nonsignatory agent Phillips before the circuit court. (The plaintiff is pursuing other claims as well against the signatory dealer before the arbitrator.) The record discloses that, while the plaintiff is contesting the issue of the arbitrability of all of these claims against the signatory dealer, the plaintiff has submitted this issue of arbitrability to the arbitrator herself. The classic operation of the doctrine of equitable estoppel intertwining on these facts, together with the other facts recited in the main opinion, entitles the nonsignatory agent Phillips to the benefit of the same arbitration agreement invoked by the signatory principal dealer. Auvil v. Johnson, 806 So.2d 343, 348 and 350 (Ala. 2001). See also my special writing in Monsanto Co. v. Benton Farm, 813 So.2d 867, 875 (Ala.2001), cited in the main opinion. Monsanto is an archetypal equitable estoppel intertwining case in that, there, the signatory principal DAS had already conclusively established its right to enforce the arbitration agreement when this Court held that the nonsignatory agent too could enforce that agreement. Id.

*136 APPENDIX

NOTES
[1] It is readily apparent from examining the arbitration agreement attached to this opinion as an appendix, that Stevens, as the purchaser, signed in two places, and that immediately above her second signature the following sentence appears: "ANY DISPUTE BETWEEN SALESPERSON AND PURCHASER WILL BE SETTLED THROUGH ARBITRATION." It is also apparent that Phillips signed the agreement on behalf of "SOUTHERN HOMES OUTLET CENTER, A DIVISION OF SOUTHERN INVESTMENT CORP., 1900 COLUMBUS PKWY, OPELIKA, AL 36804," the retailer.
[2] When Ex parte Gray was decided, a writ of mandamus was the appropriate remedy for the aggrieved party to pursue. Rule 4(d), Ala. R.App. P., adopted effective October 1, 2001, makes an order granting or denying a motion to compel arbitration reviewable by appeal.
[3] The petition for the writ of mandamus in Ex parte Thicklin was filed before October 1, 2001, the effective date of Rule 4(d), Ala. R.App. P., which provides that review of an order granting or denying a motion to compel arbitration is by appeal. Before the adoption of Rule 4(d), review of an order granting a motion to compel arbitration was by petition for a writ of mandamus. Thus Ex parte Thicklin was decided under an abuse-of-discretion standard of review applicable to a petition for a writ of mandamus.