The sole question presented is whether the plaintiff, the Occupational Safety Association of Alabama Workmen's Compensation Fund ("the Fund") must arbitrate its claims against the defendants Peter D. Norman; Thomas Albrecht; Independent Association Administrators, Inc. ("IAA"); and Sterling Capital Advisors, Inc. ("Sterling Capital"), and its managing director, Gregory A. Weir. These defendants are nonsignatories to a "Loss Portfolio Transfer Agreement" between the Fund and Riscorp National Insurance Company (a subsidiary of Riscorp, Inc.) ("Riscorp"), an agreement that contains an arbitration clause. The trial judge denied the nonsignatory defendants' motions to compel arbitration. We affirm.
The plaintiff is a self-insurance workers' compensation fund, established in February 1992, under § 25-5-9, Ala. Code 1975, to allow certain businesses to join together for the purpose of providing and receiving workers' compensation coverage. Initially, only four companies were involved. By 1996, the Fund had grown to 2,000 businesses, with $45 million in annual premiums. At that time, the Fund was one of the two largest self-insured funds in Alabama.
The Fund entered into an "Administrative Services Agreement" (which contains no arbitration clause) with the defendant IAA. The agreement provides that IAA shall "establish and coordinate necessary procedures and practices to be duties of the administrator required by the Bylaws, this Agreement and applicable state regulations." In addition, IAA was to furnish an administrator; Peter D. Norman became *Page 790 
the first administrator of the Fund. The Fund contends that in the summer of 1996, Norman advised the Fund that it would be in its best interest to transfer its workers' compensation insurance contracts to the defendant Riscorp. The Fund alleges that, based upon the representations made by the defendant Norman, the members of the Fund's board of trustees voted to transfer all of the Fund's contracts for workers' compensation coverage to Riscorp. At Norman's suggestion, the Fund engaged the defendant Sterling Capital to render a "fairness opinion" on the proposed transfer agreement, and the study for that fairness opinion was performed by the defendant Gregory A. Weir, managing director of Sterling Capital. Weir issued an opinion stating that the proposed terms of the "Loss Portfolio Transfer Agreement" ("LPTA"), the contract that would transfer all of the Fund's contracts for workers' compensation to Riscorp, were fair for the Fund from a financial point of view. The Fund and Riscorp executed the LPTA on August 26, 1996. Only these two parties were signatories to the LPTA.[1]
The LPTA contains, as Article 16, an arbitration provision, which reads in pertinent part:
"Article 16 Arbitration
 "A. Any dispute or other matter or question between the Fund and the insurer arising out of or relating to the formation, performance or breach of the Agreement, whether such dispute arises before or after termination of this Agreement, shall be settled by arbitration if the parties are unable to resolve the dispute through negotiation. Arbitration shall be initiated by the delivery of a written notice of demand for arbitration by one party to the other."
On August 20, 1997, the Fund sued Riscorp, IAA, and Peter D. Norman. Its complaint stated these counts: (1) breach of contract, (2) demand for an accounting, (3) fraud, (4) breach of fiduciary duty, (5) negligence/wantonness, and (6) suppression. The Fund alleged that, unbeknown to the Fund, at the same time Norman was representing to the trustees of the Fund that the Fund should transfer all of its contracts to Riscorp, Norman was negotiating a deal with Riscorp for the sale of IAA to the Riscorp defendants, a deal by which Norman and his partner would receive approximately $10.9 million in cash and stocks. The Fund alleged that Norman and IAA had a conflict of interest and breached their fiduciary duties under the Administrative Services Agreement by recommending that the Fund transfer its contracts to Riscorp.
On July 31, 1998, the Fund amended the complaint to add three new defendants: Thomas Albrecht (Norman's partner), and Capital Sterling and its managing director, Gregory A. Weir. The claim against Capital Sterling arose out of the letter agreement engaging Sterling Capital to perform a fairness opinion for the Fund.
The defendants moved to compel arbitration, based upon Article 16 of the LPTA. The trial judge granted Riscorp's motion to compel arbitration, but denied the motions of the nonsignatory defendants. The nonsignatory defendants appealed from the order denying their motions.
The nonsignatory defendants argue that this appeal is controlled by Ex parte Napier, 723 So.2d 49 (Ala. 1998). InNapier, this Court held that the plaintiffs' claims against the signatory defendants and those against the nonsignatory defendants were sufficiently intertwined that all claims must be arbitrated.Id. at 53. However, the arbitration clause in Napier is distinctly different from that in the present case, in that the clause in Napier is broader than the clause in the present *Page 791 
case. The clause at issue in Napier provided:
 "All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s)."
723 So.2d at 51. The clause in Napier was particularly broad, encompassing not only "all disputes, claims or controversies" but also "the relationships that result from [the] [c]ontract." See
723 So.2d at 53, citing Ex parte Martin, 703 So.2d 883, 886
(Ala. 1996).
The law relating to a nonsignatory to an arbitration clause is well established. This Court has never held that a nonsignatory could compel arbitration with a signatory based on an arbitration agreement that is as narrow and restricted as the agreement here is. The agreement found at Article 16 of the LPTA contains clear, unambiguous, and narrow language requiring arbitration between the Fund and Riscorp, the only signatories. The agreement specifies that arbitration will occur "between the Fund and the insurer [Riscorp]." They are the only parties to this agreement. Other language in the agreement (language not quoted above) specifies that "each party" shall appoint an arbitrator. This Court has consistently held that a limited arbitration clause, such as the one before us, that specifically references only the signing parties, does not encompass nonsignatory defendants; Norman, Albrecht, IAA, Sterling Capital, and Weir are nonsignatory defendants. Med Center Cars, Inc. v.Smith, 727 So.2d 9 (Ala. 1998); Prudential Sec., Inc. v.Micro-Fab, Inc., 689 So.2d 829 (Ala. 1997); Ex parte Martin, supra, 703 So.2d 883; Ex parte Jones, 686 So.2d 1166 (Ala. 1996).
The arbitration agreement in this case is very similar to that in Med Center Cars, Inc. v. Smith, supra. In that case, a class action, Kimberly Smith had signed an arbitration agreement limited to "disputes and controversies of every kind and naturebetween buyer and seller." 727 So.2d at 13. This Court ruled that the signatories were bound by the arbitration clause, but that the language of that clause was not broad enough to encompass claims against the nonsignatory defendants:
 "The language of the arbitration clauses in this case are not broad enough to encompass claims against the nonsignatories. The written arbitration agreements in this case expressly limit the scope of the agreements to `disputes, claims, and controversies' arising between the `Buyer' and the `Seller' only. The buyer and the seller are the only parties referred to in the arbitration agreements. The nonsignatory defendants are not the `sellers' referred to in the individual arbitration agreements at issue in this case. Therefore, the nonsignatories have no standing to seek enforcement of those arbitration agreements. Only disputes between the `buyer' and the `seller' in the contracts containing arbitration agreements are subject to the arbitration agreements. See Ex parte Jones, 686 So.2d 1166
(Ala. 1996)."
Med Center Cars, at 19. (Emphasis added in Med Center Cars omitted here.)
The nonsignatory defendants argue that the doctrine of equitable estoppel allows a nonsignatory to force a signatory to arbitrate if the plaintiff's claims are "intimately founded in and intertwined with the underlying contract obligations," quoting the opinions of the United States Court of Appeals for the Eleventh Circuit in McBro Planning Development Co. v. Triangle ElectricConstruction Co., 741 F.2d 342, 344 (11th Cir. 1984), and SunkistSoft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.2d 753, 757 (11th Cir. 1993).
The United States District Court in Boyd v. Homes of Legend,Inc., 981 F. Supp. 1423 (M.D.Ala. 1997), explained the *Page 792 
application of equitable estoppel in this context, as follows:
 "McBro and the other equitable estoppel cases cited above establish that unless at least one of two factual scenarios is present, courts are loathe to find that the claims against a nonsignatory are intimately founded in and intertwined with the underlying contractual obligations such that the doctrine of equitable estoppel may be applied. Under the first scenario, exemplified by McBro, the duties and responsibilities alleged to have been breached by the nonsignatory must have arisen under and have been assigned to the nonsignatory by the contract containing the arbitration provision. . . .
 "The second factual setting in which application of equitable estoppel is warranted arises when the signatory raises allegations of, not merely parallel or similar, but substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. . . ."
981 F. Supp. at 1432-33. (Citations omitted.) Neither of these scenarios is present in this case.
The common thread running through the cases cited by the nonsignatory defendants is that in each case the duties and obligations of the nonsignatories seeking to compel arbitration arose under the contract containing the arbitration agreement. The nonsignatory defendants in this present case contend that their obligation to the Fund arose under the LPTA and thus that the plaintiff's claims are "intimately founded in and intertwined with" that contract obligation. However, the record indicates otherwise. Here, the duties and obligations as between the Fund and these nonsignatory defendants arose out of separate agreements between the Fund and these defendants — separate agreements that did not contain arbitration clauses. The duties and obligations that Norman, Albrecht, and IAA are accused of breaching arose not from the LPTA, but from the Fund's bylaws and from the Administrative Services Agreement, a separate contract between the Fund and IAA, which does not contain an arbitration provision. The Fund's claims against Sterling Capital and Gregory Weir arose from an engagement letter and from their agreement to render a fairness opinion for the Fund. Thus, the Fund's claims against the nonsignatory defendants do not arise out of the LPTA, but out of other contracts, which do not contain arbitration provisions.
The trial court properly denied the nonsignatory defendants' motions to compel arbitration.
AFFIRMED.
Houston, Cook, and Johnstone, JJ., concur.
See and Lyons, JJ., concur in the result.
Hooper, C.J., and Maddox, J., dissent.
[1] Although counsel for Peter D. Norman argues that Norman is a signatory, he was merely a witness.