813 So.2d 867 (2001)
MONSANTO COMPANY and Mike Dugan
v.
BENTON FARM, a partnership; et al.
Monsanto Company.
v.
John C. Henry, as administrator of the estate of Crawford Henry, deceased.
Delta and Pine Land Company
v.
Benton Farm, a partnership; et al.
Delta and Pine Land Company and Brad Smith
v.
John C. Henry, as administrator of the estate of Crawford Henry, deceased.
Nos. 1000900 through 1000903.
Supreme Court of Alabama.
September 28, 2001.
*868 Warren B. Lightfoot, Harlan I. Prater IV, James F. Hughey III, and Kevin E. Clark of Lightfoot, Franklin & White, L.L.C., Birmingham, for Monsanto Company and Mike Dugan.
Steadman S. Shealy, Jr., and James H. Pike of Cobb, Shealy & Crum, P.A., Dothan, for Delta and Pine Land Company and Brad Smith.
N. Lee Cooper, W. Percy Badham III, Robert W. Tapscott, Jr., and Brannon J. Buck of Maynard, Cooper & Gale, P.C., Birmingham; and P. Henry Pitts and Rickman E. Williams III of Pitts & Pitts, Selma, for appellees.
HARWOOD, Justice.
Monsanto Company and its employee Mike Dugan (jointly referred to as "Monsanto"), Delta and Pine Land Co. ("Delta"), *869 and Brad Smith are defendants in two actions pending in the Lowndes County Circuit Court. They appeal the trial court's orders denying their motions to compel arbitration. The first of the two actions was filed by Benton Farm (a partnership), Hoffman Rhyne, Sr., Hoffman Rhyne, Jr., and Dan Rhyne (this lawsuit is sometimes referred to as "the Rhyne litigation"). The second action was filed by John C. Henry, as administrator of the estate of Crawford Henry (this lawsuit is sometimes referred to as "the Henry litigation"). The plaintiffs in both lawsuits (sometimes referred to collectively as "the plaintiffs") sued the same group of defendants, a group that includes the appellants in these four appeals, based on claims arising out of the purchase of "genetically engineered" cottonseed.[1] We affirm in part, reverse in part, and remand.
Monsanto has developed and licensed technology that enables it to alter the genetic traits of cottonseed. Since 1996, Delta, through an agreement with Monsanto, has used this technology to create what is known as "transgenic" cottonseed, for widespread acreage planting by farmers. Transgenic cottonseed has an altered genetic makeup that is intended to enhance various traits in the resulting plants, including growth, cotton production, and resistance to disease and insect infestation. Delta has also marketed this transgenic cottonseed to various dealers and distributors under the brand name "Technology Cottonseed."
In the spring of 1999, the plaintiffs, commercial farmers who own and operate farms in Dallas, Perry, Autauga, and Lowndes Counties, ordered Technology Cottonseed from Dixie Agricultural Supply ("DAS") and three other local seed dealers, for planting their 1999 crop. The plaintiffs purchased a total of 2,195 bags of the Technology Cottonseed from the four dealers. Of that amount, the plaintiffs purchased 504 bags of Technology Cottonseed from DAS. All of the plaintiffs' orders to DAS for Technology Cottonseed were handled by Smith, a DAS employee, who is also one of the appellants. The record indicates that some, but not all, of the shipments of Technology Cottonseed by DAS to the plaintiffs included a delivery ticket. The front of the delivery ticket reflected the type of seed, the number of bags purchased, and the price at which the seed was purchased. The delivery ticket had various other terms on the back, including the following arbitration provision:
"You, your agents, and any other persons having or claiming to have a claim against Seller relating to the goods sold agree that any controversy or claim arising out of or relating to this contract or the goods sold hereunder, except claims relating to payment due Seller, may be settled by arbitration, at Seller's discretion, administered by the American Arbitration Association under its Commercial Arbitration Rules in effect at the time of the filing of a claim, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."
DAS had a delayed-billing procedure with the plaintiffs whereby DAS sent an invoice to them after the Technology Cottonseed had been shipped. The invoices sent by DAS to the plaintiffs contained the same arbitration clause as quoted above from the delivery ticket. The transactions involving Technology Cottonseed between the plaintiffs and the seed-supply dealers other than DAS did not include arbitration *870 clauses. In every transaction where the plaintiffs purchased Technology Cottonseed, either from DAS or from another dealer, they were required to enter into a "technology licensing agreement" with Monsanto. The technology-licensing agreement between Monsanto and the plaintiffs did not contain an arbitration provision.
On March 14, 2000, the Rhyne plaintiffs filed a complaint in the Lowndes County Circuit Court against a group of defendants, including the appellants, on claims alleging breach of contract, misrepresentation, suppression, wantonness, negligence, breach of fiduciary duty, and liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), all arising out of problems with their 1999 cotton crop. Henry filed a complaint in that court on March 22, 2000, making substantially the same allegations and stating the same claims against the defendants. The plaintiffs alleged that the Technology Cottonseed they purchased was defective and that it did not perform according to the representations of the defendants.
On April 17, 2000, Monsanto removed both cases to the United States District Court for the Middle District of Alabama. While the cases were pending in the federal court, Monsanto, as a nonsignatory to the arbitration agreement, filed motions in both cases to compel arbitration of the plaintiffs' claims. The motions to compel arbitration were based on the arbitration agreement included on DAS's delivery tickets and invoices. On June 5, 2000, both cases were remanded for lack of diversity. In the order sending the cases back to the state court, the federal district judge specifically deferred any ruling on the motions to compel arbitration, leaving them to the state court. On August 1, 2000, Delta, DAS, and Smith made a joint motion in the state court to join Monsanto's motions to compel arbitration; the trial court granted that motion to join. On October 3, 2000, in the Rhyne litigation, and on October 27, 2000, in the Henry litigation, the trial court granted DAS's motion to compel arbitration, but denied the motion as to all other defendants, including DAS's employee Smith. The orders in both cases state, in pertinent part:
"7. Regardless of whether the arbitration clause is part of the agreement between the Plaintiff and [DAS], the Nonsignatory Defendants are not entitled to compel arbitration since the facts here fit neither factual scenario required for applying equitable estoppel as set out in Norman v. Occupational Safety Association of Alabama Workmen's Compensation Fund, 776 So.2d 788 (Ala. 2000), and Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997). Also, preventing the Nonsignatories from [invoking] arbitration would not eviscerate the underlying arbitration agreement. (MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999), citing Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993)).
"8. The First Amended Complaint alleges [tortious] conduct against [DAS] that is different than the [tortious] conduct allegedly committed by [Delta] and Monsanto. It is clear from the First Amended Complaint that the claims against [Delta] and Monsanto relate to the development, engineering, production, and testing of technology cottonseed, while the claims against [DAS] relate to its representations and advice about the seed along with its relationship with the Plaintiff. Furthermore, the Plaintiff does not allege a conspiracy between [DAS] and the Nonsignatory Defendants. Although the original complaint was not so discriminating, clearly different claims can exist which would *871 not be interdependent with the claims against [DAS]."
Thereafter, in the Rhyne litigation, on October 25, 2000, Monsanto and Delta filed a joint motion asking the trial court to reconsider the denial of the motion to compel arbitration. On November 13, 2000, Delta filed a supplemental brief in support of its October 25 motion to reconsider. In the Henry litigation, Monsanto and Delta, on November 7, 2000, filed a joint motion to vacate the order denying their motion to compel arbitration. On November 14, 2000, Delta and Smith jointly filed a supplemental brief in support of the November 7 motion to vacate the order denying the motion to compel arbitration. One of the arguments raised in the supplemental brief was that Smith, as an employee of DAS, a signatory to the arbitration agreement, was entitled to arbitration of the plaintiffs' claims against him, under Ex parte Gray, 686 So.2d 250 (Ala.1996). On December 5, 2000, Monsanto and Delta jointly filed evidentiary materials in support of the November 7 motion to vacate the order denying their motion to compel arbitration. On January 3, 2001, the trial court issued an order denying the motion to reconsider in the Rhyne litigation and an order denying the motion to vacate the order denying arbitration in the Henry litigation. Monsanto, Delta, and Smith filed notices of appeal in both cases on February 14, 2001, and this Court consolidated the appeals for this review.
The sole issue on appeal is whether the trial court erred in denying Monsanto, Delta, and Smith's motions to compel arbitration, on the basis that those defendants were nonsignatories to the arbitration agreement. An appeal is the appropriate procedure by which to seek review of a trial court's order denying a motion to compel arbitration. Harold Allen's Mobile Home Factory Outlet, Inc. v. Early, 776 So.2d 777 (Ala.2000).[2] "This Court reviews de novo the denial of a motion to compel arbitration." Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000). Because Monsanto and Delta do not have an employer-and-employee relationship with DAS, we will address their arguments separately from those of Smith, who is an employee of DAS.

I. Monsanto and Delta
Monsanto and Delta argue that the doctrine of equitable estoppel requires that the arbitration agreement between the plaintiffs and DAS must also apply to Monsanto and Delta, so that they are entitled to compel arbitration of the plaintiffs' claims against them based on DAS's arbitration provision.
"Although this Court has recognized the applicability of the doctrine of equitable estoppel in certain cases involving a nonsignatory's motion to compel arbitration, see Ex parte Isbell, 708 So.2d 571 (Ala. 1997), that doctrine is not applicable in cases such as this one, where the arbitration provision is specifically limited to the signing parties (i.e., where the provision is not broad enough to indicate an intent on the plaintiffs' part to arbitrate with a nonsignatory). See, e.g., Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998); Ex parte Isbell, supra; Ex parte Jones, 686 So.2d 1166 (Ala.1996); Ex parte Martin, 703 So.2d 883 (Ala. 1996); Ex parte Stripling, [694 So.2d 1281 (Ala.1997)]; Ex parte Stallings & Sons, Inc., 670 So.2d 861 (Ala.1995)." *872 First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 560 (Ala.1999). See Ex parte Lovejoy, 790 So.2d 933 (Ala.2000), quoting this same passage. Therefore, we consider whether the arbitration provision in this case is broad enough to show that the plaintiffs intended to arbitrate their claims with the nonsignatories, Monsanto and Delta.
We find two opinions particularly instructive, Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000), and Carriage Homes v. Channell, 777 So.2d 83 (Ala.2000). In Parkway Dodge, the plaintiff purchased an automobile from Parkway Dodge that had been manufactured by DaimlerChrysler Corporation. After experiencing a number of problems with the vehicle, the plaintiff sued both Parkway, the dealer, and DaimlerChrysler, the manufacturer, on various claims, including fraud, suppression, deceit, and breach of warranty.
When the plaintiff Yarbrough purchased the automobile, she executed a "Buyer's Order" that contained the following arbitration clause:
"The Dealer and Purchaser(s) mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of the contract(s) entered into by the parties of and concerning the within described motor vehicle, as follows:... The undersigned agree that all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the sales transaction entered into,... Dealer and the Purchaser(s) agree to submit such dispute(s) to BINDING ARBITRATION...."
779 So.2d at 1206. Both Parkway and DaimlerChrysler moved to compel arbitration, based on the arbitration clause. This Court held that Parkway was entitled to compel arbitration, but that the manufacturer, DaimlerChrysler, was not.
In affirming the trial court's order denying DaimlerChrysler's request for arbitration, this Court emphasized that the language of the arbitration agreement referenced only "the `dealer' and the `purchaser'" and that it did not mention the manufacturer or any other third party. 779 So.2d at 1209-10. Although the arbitration clause did not expressly limit arbitration to disputes "between the purchaser and the dealer," we determined that DaimlerChrysler could not compel arbitration because the arbitration clause made no mention of any parties other than the purchaser and the dealer and was therefore not broad enough to encompass the manufacturer.
"Although this Court has recognized the applicability of the doctrine of equitable estoppel in certain cases involving a nonsignatory's motion to compel arbitration, the arbitration agreement in this case is specifically limited to the signing parties, namely, Yarbrough, as the purchaser, and Parkway, as the dealer. The language of the arbitration agreement is not broad enough to reach the manufacturer; therefore, DaimlerChrysler is not entitled to compel arbitration based upon the terms of the arbitration agreement between Yarbrough and Parkway."
Id.
In Carriage Homes, supra, the plaintiffs sued the dealership that had sold them their mobile home; the mobile-home manufacturer; and the company that had financed the purchase. The plaintiffs stated various claims, including breach of warranty, breach of contract, negligence, misrepresentation, and fraud. The plaintiffs had executed the following arbitration agreement with the mobile-home dealership:

*873 "The seller and the buyer(s) also agree that in the event of any controversy, dispute and/or difference of opinion arising out of or related in any manner to their contract or arising out of or related in any manner to any negotiations and/or representations made in connection[ ] with the sale of the mobile home or execution of the contract, then such controversy and/or dispute shall be resolved through binding arbitration...."
777 So.2d at 85.
The mobile-home manufacturer, which was not a signatory to the arbitration agreement, moved to compel arbitration of the plaintiffs' claims. This Court held that the manufacturer was not entitled to compel arbitration:
"The arbitration agreement is specifically applicable to the parties who executed it, namely, the [plaintiffs], as the buyers, and Johnson Mobile Homes, as the seller. The language of the arbitration agreement does not reach the manufacturer; therefore, [the manufacturer] is not entitled to compel arbitration based upon the terms of the arbitration agreement between the [plaintiffs] and Johnson Mobile Homes."
Id. at 86. We explained that the plaintiffs' allegations that Johnson Mobile Homes was an agent for the manufacturer did not entitle the manufacturer to arbitration. We noted that "[t]he arbitration agreement embraces agents of Johnson Mobile Homes and does not include a third party who might be a principal of Johnson Mobile Homes." 777 So.2d at 86.
In the case before us, the arbitration provision in the delivery tickets and the invoices limits its application to "[y]ou, your agents, and any other persons having or claiming to have a claim against Seller," and states that those claims "may be settled by arbitration, at Seller's discretion." (Emphasis added.) Thus, the arbitration provision contained in the delivery tickets and invoices is specifically limited to the buyer and the seller and is not broad enough to cover the plaintiffs' claims against Monsanto and Delta. Both the facts and the law support the order of the trial court denying Monsanto and Delta's motions to compel the plaintiffs to arbitrate; therefore, the order denying those motions is due to be affirmed. Parkway Dodge, supra; Carriage Homes, supra; see also Norman v. Occupational Safety Ass'n of Alabama Workmen's Compensation Fund, 776 So.2d 788 (Ala.2000); Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000); Homes of Legend, Inc. v. Fields, 751 So.2d 1228 (Ala. 1999); Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala.1999); Rogers, supra.

II. Smith
Smith argues that under the authority of Ex parte Gray, 686 So.2d 250, 251 (Ala. 1996), he should be able to compel arbitration of the plaintiffs' claims against him, as a nonsignatory, because he was an agent of DAS, the only defendant whose motion to compel arbitration was granted.
In Gray, the plaintiff sued an automobile dealership and its salesperson, alleging fraud. The plaintiff did not dispute that the dealership could compel arbitration, based on the agreement he had signed with the dealership, but he argued that the salesperson was not entitled to enforce arbitration because the salesperson was not a signatory to the arbitration contract. This Court held that because the plaintiff's claim was based on the allegation that the salesperson had been acting within the line and scope of his agency at the time the allegedly false representations were made, that claim was covered by the arbitration agreement with the dealership. The Court stated, "A party should not be able to *874 avoid an arbitration agreement merely by suing an employee of a principal." 686 So.2d at 251.
Implicit in the Gray opinion is the settled rule of agency that an agent "stands in the shoes" of his principal. See American States Ins. Co. v. C.F. Halstead Developers, Inc., 588 So.2d 870 (Ala.1991). Thus, an agent who has incurred liability for his principal by acting in the line and scope of his employment also "stands in the shoes" of his principal with respect to the principal's rights in the transaction. This rationale is succinctly stated in Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993):
"Under traditional agency theory, she [the nonsignatory agent] is subject to contractual provisions to which MLPF & S [the principal] is bound. Barrowclough [v. Kidder, Peabody & Co., Inc.], 752 F.2d [923] at 938 [ (3d Cir.1985) ]. Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. See, Arnold v. Arnold Corp., 920 F.2d 1269, 1281-82 (6th Cir. 1990); Letizia v. Prudential Bache Securities, 802 F.2d 1185, 1187-88 (9th Cir.1986)."
This Court has applied a comparable analysis not only in Gray, but also in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), and Ex parte Isbell, 708 So.2d 571 (Ala. 1997). See also, Georgia Power Co. v. Partin 727 So.2d 2 (Ala.1998).
In the present case, the plaintiffs' claims against DAS and Smith arise out of the same circumstances, i.e., Smith's representations, made while he was acting as an agent of DAS and within the line and scope of his employment with DAS, concerning the sale of the Technology Cottonseed to the plaintiffs. The trial court has already ordered the plaintiffs to arbitrate their claims against DAS, and the plaintiffs did not appeal that order. Ordering Smith, DAS's agent, to a trial on the same facts and legal theories would be anomalous. Under the circumstances of this case, Smith "stands in the shoes" of his principal, DAS, not only as to the question of liability, but also as to the question of the coverage of the arbitration provision used by DAS in the sales to the plaintiffs. Gray and McDougle, supra. The trial court's orders are therefore due to be reversed insofar as they relate to Smith.

III. Conclusion
The trial court's orders denying the motions to compel arbitration are affirmed insofar as they relate to the plaintiffs' claims against Monsanto and Delta; however, insofar as they relate to the plaintiffs' claims against Smith, they are reversed; and the cases are remanded.
1000900AFFIRMED.
1000901AFFIRMED.
1000902AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
1000903AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the judgment and in the rationale in part.
MOORE, C.J., concurs in the result in part and dissents in part.
JOHNSTONE, Justice (concurring in cases 1000900, 1000901, and 1000902; and concurring in the judgment and in the rationale in part in case number 1000903).
I concur in cases 1000900, 1000901, and 1000902. Except for a part of the rationale, *875 I likewise concur in case number 1000903.
My disagreement in the rationale of case number 1000903 is directed to two statements in the main opinion. The first is that "the settled rule of the law of agency [is] that an agent `stands in the shoes' of his principal." 813 So.2d at 874. The second statement is that "an agent who has incurred liability for his principal by acting in the line and scope of his employment also `stands in the shoes' of his principal with respect to the principal's rights in the transaction." 813 So.2d at 874.
As a general rule, it just ain't so in either the law of contracts or the law of torts. For instance, an agent-in-fact who acts for the buyer in the purchase of real property is not personally entitled to ownership of the real property and is not personally bound for payment of the purchase price. An agent may become personally bound to his principal's contractual obligations only by concealing his agency and the existence of his principal and thereby creating the impression that the agent himself is the contracting party. Likewise, the agent who commits a tort, such as crashing his principal's vehicle into the vehicle of a plaintiff, does not necessarily "stand in the shoes" of his principal. While the principal may be liable for the agent's tort, the principal may have defenses to the liability and to punitive damages not available to the agent himself. The statements in the main opinion effectively would make an agent a full partner with his principal.
I agree, however, that the specialized rule of Ex parte Gray, 686 So.2d 250 (Ala. 1996), accords the agent Smith in the case before us the same arbitration rights as his principal Dixie Agricultural Supply, which has won an unappealed order compelling arbitration. Compare Auvil v. Johnson, 806 So.2d 343 (Ala.2001) (no right to compel arbitration accorded to a non-signatory agent whose signatory principal lost its motion to compel arbitration and did not appeal the denial (no intertwining without two threads to twine together)). Therefore I concur in the judgement of this Court reversing the denial of Smith's motion to compel arbitration.
MOORE, Chief Justice (concurring in the result in part and dissenting in part in case no. 1000903, and concurring in the result in case no. 1000900, case no. 1000901, and case no. 1000902).
In case number 1000903, I concur in the result of affirming the trial court's order denying Delta and Pine Land Company's motion to compel arbitration; however, in that case, I dissent from the reversal of the trial court's order denying Brad Smith's motion to compel arbitration. I concur in the result in case number 1000900, case number 1000901, and case number 1000902.
NOTES
[1] Monsanto, Delta, and Smith are the only defendants involved in these appeals. The remaining defendants will not be addressed.
[2] Rule 4, Ala. R.App. P., as amended effective October 1, 2001, makes reviewable by appeal an order granting or denying a motion to compel arbitration. See Rule 4(d) and the court comments to the amendment effective October 1, 2001.