926 So.2d 333 (2005)
Gayle P. FOUNTAIN d/b/a Pioneer Sales
v.
Kimberly INGRAM.
1040539.
Supreme Court of Alabama.
October 14, 2005.
*334 M. Andrew Donaldson and Edward C. Hixon of Slaten & O'Connor, P.C., Montgomery, for appellant.
Anthony J. Bishop of Cassady & Bishop, P.C., Evergreen, for appellee.
WOODALL, Justice.
Gayle P. Fountain d/b/a Pioneer Sales ("Pioneer") in Brewton appeals from an order denying her motion to compel arbitration of a dispute between Pioneer and Kimberly Ingram, which arose out of Ingram's purchase of a mobile home from Pioneer. We affirm.
On February 27, 2003, in connection with her purchase of the mobile home, Ingram signed a "Manufactured Home Retail Installment Contract, No. 144477" ("the installment contract"). The parties to the installment contract were Pioneer and Ingram. The installment contract set out the principal amount of the purchase and the rate of interest and gave Pioneer a security interest in the mobile home. It stated: "You [Ingram] promise to pay us [Pioneer] the principal amount of $18,871.87 plus interest on the unpaid balance at the rate(s) of 14.00% per year." The installment contract did not contain an arbitration provision. That same day, Ingram signed a separate document, which stated: "By signing this document, I agree that at any time if my mobile home account is more than 2 months and 3 weeks past due, Pioneer has the authority to pick up my mobile home with no further notice given to me."
Additionally, on February 27, 2003, Ingram signed a stand-alone arbitration agreement, which provided, in pertinent part:
"ARBITRATION AGREEMENT
"1. DATE AND PARTIES. The date of this Arbitration Agreement (Agreement) *335 is 02-27-2003, and the parties (Parties), their addresses and tax identification or social security numbers, if required, are as follows:

"CUSTOMERS: Kimberly Ingram

". . . .
"FINANCIAL INSTITUTION: Bank of Brewton [`the Bank']
". . . .
"2. AGREEMENT TO ARBITRATE. The Agreement concerns any dispute, claim or other matter in question between or among the Parties (Dispute). Any party may submit a Dispute to binding arbitration, except as otherwise indicated in the Agreement or agreed to in writing by the Parties.
"The arbitrator shall determine whether a Dispute is arbitrable. A single arbitrator shall resolve any Dispute, whether individual, joint or class in nature, or whether based on contract, tort or any other matter at law or in equity.
"The Parties agree to limit the Dispute to those arising out of or relating to the agreements or transactions described as follows.
"Loan Agreements (as described), NOTE # 144477."
(Emphasis added.) Pioneer subsequently assigned the installment contract to the Bank.
Ingram sued Pioneer, alleging that, on May 5, 2004, Pioneer "unlawfully entered upon the lands of [Ingram in the City of Evergreen] and illegally repossessed her. . . manufactured home." (Emphasis added.) Her complaint contained claims of conversion, trespass, wantonness, and breach of contract. Pioneer moved to compel arbitration, based on the stand-alone agreement between Ingram and the Bank. The trial court denied the motion, and Pioneer appealed.
It is undisputed that Pioneer is not a signatory to any document containing an arbitration provision. Pioneer concedes that this Court has "held that assent to arbitrate is usually to be manifested through a party's signature on the contract containing the arbitration provision." Pioneer's brief, at 26 (emphasis added). It insists, however, that "Alabama courts have enforced exceptions to this rule so as to allow a non-signatory, and even one who is not a party as to a particular contract, to enforce an arbitration provision within the same contract." Id.
Pioneer is correct in stating that this Court will enforce an arbitration provision in a contract to which the proponent of arbitration is not a signatory in either of two instances. One instance involves a "variation on the theory of `equitable estoppel.'" ECS, Inc. v. Goff Group, Inc., 880 So.2d 1140, 1145 (Ala.2003). Another instance "`arises from a third-party-beneficiary theory that affords the [nonsignatory] all the rights and benefits, as well as the burdens of that contract, including those associated with arbitration.'" Id. (quoting Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000)). Pioneer contends that this case exemplifies both instances and that, therefore, Ingram's dispute with Pioneer is subject to arbitration.

I. Equitable Estoppel
Arbitration may be compelled "under the doctrine of `intertwining,' where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim." Conseco Fin. Corp. v. Sharman, 828 So.2d 890, 893-94 (Ala. 2001).
"However, we have held that the doctrine of intertwining does not apply when there is no ongoing arbitration between the parties to the arbitration *336 agreement. See Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540, 545 (Ala.2000), observing that `"intertwining" requires at least two threads to weave togetherone cannot intertwine a single thread.'"
828 So.2d at 893-94 (emphasis added). See also Carriage Homes v. Channell, 777 So.2d 83 (Ala.2000).
The doctrine of intertwining does not apply in this case. This is most obviously so, because the only parties to the stand-alone arbitration agreement are Ingram and the Bank, and "there is no ongoing arbitration between the parties to the arbitration agreement." Indeed, the Bank is not a party to this action and is not involved in any dispute with Ingram. Thus, if Ingram's claims are arbitrable, they must be so pursuant to Pioneer's third-party-beneficiary theory.

II. Third-Party Beneficiary
"A party claiming to be a third-party beneficiary `must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.'" Ex parte Stamey, 776 So.2d at 92 (quoting Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala.1993)). The third-party-beneficiary theory has particular application in the arbitration context where a litigant is attempting to claim the benefit of a contract containing an arbitration provision, while seeking to avoid the burden of the arbitration provision,[1] or where the contract "clearly shows that the parties contemplated [the nonsignatory proponent of arbitration] as a third-party beneficiary" of the arbitration provision. Ex parte Stamey, 776 So.2d at 92.
Stameyon which Pioneer reliesinvolved claims by Gary Stamey and Deborah Stamey, the purchasers of a mobile home, against Hallmont Homes, Inc. ("Hallmont"), which sold the home, and Green Tree Financial Corporation ("Green Tree"), which financed the purchase of the mobile home. 776 So.2d at 87. Hallmont was not a signatory to any document containing an arbitration clause. However, the "financing agreement between Green Tree and the Stameys," id. (emphasis added), contained an arbitration clause and a waiver-of-jury-trial clause, which provided, in pertinent part:
"`WAIVER OF JURY TRIAL: I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION BETWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS AGREEMENT, WHETHER THE AGREEMENT IS ASSERTED AS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS AGREEMENT, WHETHER THE AGREEMENT IS ASSERTED AS THE BASIS FOR A CLAIM, COUNTERCLAIM OR CROSS CLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSS CLAIM.'"
776 So.2d at 92-93 (capitalization in original). Moreover, "[t]he section of the contract entitled `ITEMIZATION OF THE AMOUNT FINANCED' sets out the amounts that were to be `paid on [the *337 Stameys'] behalf.' Included in [that section were] the amounts that were paid on behalf of the Stameys to Hallmont for the cost of the manufactured home . . . ." 776 So.2d at 92 (capitalization in original).
Hallmont sought to compel arbitration, arguing that it was a third-party beneficiary of the financing agreement between the Stameys and Green Tree. This Court agreed with Hallmont, noting that the waiver-of-jury-trial section "clearly" applied to Hallmont, not to Green Tree. 776 So.2d at 93. We stated: "The language in the two [quoted] sections [of the contract] clearly indicates an intent on behalf of the Stameys and Green Tree to benefit Hallmont through the financing contract." 776 So.2d at 93.
Nevertheless, this Court has often acknowledged the right of contracting parties to limit the scope of an arbitration provision "to the parties, or to specifically described third parties." ECS, Inc., 880 So.2d at 1146. See, e.g., Ex parte Cox, 828 So.2d 295 (Ala.2002); Monsanto Co. v. Benton Farm, 813 So.2d 867 (Ala.2001); Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000); and Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000).
"For example, the arbitration provision in Cox provided, in pertinent part: `"Any controversy or claim between or among you and I [sic] or our assignees arising out of or relating to this contract. . . shall, if requested by either you or me, be determined by arbitration . . . ."' 828 So.2d at 296 (emphasis added). In Monsanto, the arbitration provision stated, in part: `"You [the buyer], your agents, and any other persons having or claiming to have a claim against Seller relating to the goods sold agree that any controversy or claim arising out of or relating to this contract or the goods sold hereunder, . . . may be settled by arbitration . . . ."' 813 So.2d at 869 (emphasis added). Yarbrough involved an arbitration provision that stated, in part: `"The Dealer and Purchaser(s) mutually covenant . . . . that [as to] all disputes. . . resulting from or arising out of the sale transaction entered into . . . Dealer and the purchaser(s) agree to submit such dispute(s) to BINDING ARBITRATION."' 779 So.2d at 1206 (capitalization original; emphasis added). Kennedy involved an arbitration clause that stated, in part: `"All disputes, controversies or claims . . . between seller and buyer . . . arising out of any transaction or relationship between seller and buyer or arising out of any prior or future dealings between seller and buyer, shall be . . . settled by arbitration."' 774 So.2d at 542 (emphasis added)."
ECS, Inc., 880 So.2d at 1146.
In each of the cases cited in ECS, Inc., "a nonsignatory attempted unsuccessfully to invoke an arbitration provision," 776 So.2d at 1146 (emphasis added), because the nonsignatories were outside the scope of the arbitration provisions as expressly limited by the contracting parties. Pioneer's position is similar to that of the nonsignatories discussed in ECS, Inc.
The relevant instruments in this case are the installment contract and the stand-alone arbitration agreement. The former describes the parties as Ingram and Pioneer, while the latter defines the parties as Ingram and the Bank. Although the stand-alone arbitration agreement referenced the installment contract, it did so only to identify that document as the sole basis of any arbitrable dispute "between or among the Parties" (emphasis added), i.e., Ingram and the Bank.
In this connection, Pioneer argues that "[t]he plain language of the agreements between [Ingram] and Pioneer Sales indicate that the scope of the arbitration *338 agreement includes any and all disputes relating to the [installment contract]." Pioneer's brief, at 24. This argument, however, misses the point. The issue is not whether the stand-alone arbitration agreement encompasses "disputes relating to the [installment contract]" (emphasis added), but whether it encompasses entities who are not parties to the stand-alone arbitration agreement.
The financing agreement in Stamey contained an arbitration provision and a clause identifying the seller as the beneficiary of the payments "on behalf" of the purchasers, while the installment contract in this case contains neither an arbitration provision nor a provision identifying Pioneer as the beneficiary of any payments "on behalf" of Ingram. It merely evidences Ingram's promise to pay Pioneer a stated amount. More significantly, in Stamey, the seller was repeatedly identified as the beneficiary of the waiver-of-jury-trial provision, while, in this case, Pioneer is never mentioned in the stand-alone arbitration agreement between Ingram and the Bank. In short, Stamey does not support Pioneer's position.
"Parties are free to contract as they will, provided they contract within the law." Perkins v. Skates, 220 Ala. 216, 218, 124 So. 514, 515 (1929). "The [Federal Arbitration Act, 9 U.S.C. § 2] `simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,' and `parties are generally free to structure their arbitration agreements as they see fit.'" Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). "[T]he federal policy favoring arbitration does not require this Court to ignore the contractual intentions of the parties." 776 So.2d at 746.
A mobile-home purchaser and one of the other parties to the overall transaction may legally agree, pursuant to a stand-alone arbitration agreement, to make their "arbitration agreement . . . specifically applicable [only] to" themselves. Carriage Homes, 777 So.2d at 86. Ingram and the Bank did so in this case. For that reason, the trial court correctly denied Pioneer's motion to compel arbitration. The order of the trial court is, therefore, affirmed.
AFFIRMED.
NABERS, C.J., and SMITH and PARKER, JJ., concur.
LYONS, J., concurs in part and concurs in the result.
LYONS, Justice (concurring in part and concurring in the result).
I concur fully with Part II of the main opinion, "Third-Party Beneficiary." I respectfully concur in the result as to Part I, "Equitable Estoppel," because the limitation of the scope of the arbitration agreement to the resolution of disputes between Ingram and the Bank, a point made the basis for affirming under Part II the order denying arbitration, also stands as a separate and sufficient basis for affirming the denial of arbitration on the theory of equitable estoppel. See ECS, Inc. v. Goff Group, Inc., 880 So.2d 1140, 1146 (Ala. 2003) ("At a minimum, estoppel requires that the `description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it.'") (quoting Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000)). See also Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122 (Ala.2002), rejecting the nonsignatory defendants' equitable-estoppel argument *339 where the language of the arbitration agreement limited arbitration to the signing parties.
NOTES
[1] See, e.g., Wolff Motor Co. v. White, 869 So.2d 1129 (Ala.2003); Credit Sales, Inc. v. Crimm, 815 So.2d 540 (Ala.2001); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala. 1999); Ex parte Dyess, 709 So.2d 447 (Ala. 1997); see also Ex parte Payne, 741 So.2d 398, 404 (Ala.1999); Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala.1998).