[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14482
_____

D.C. Docket No. 7:13-cv-00506-LSC

THE HANOVER INSURANCE COMPANY,

Plaintiff - Appellee,

versus

ATLANTIS DRYWALL & FRAMING LLC,
BAY MEADOWS CONSULTING LLC,
LAURENCE LAMPHERE,
CHRISTIN M. LAMPHERE, et al.,

Defendants,

MARILOURDES DEYO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 26, 2015)

ON PETITION FOR REHEARING

Before MARCUS, ROSENBAUM and GINSBURG,[*] Circuit Judges.

PER CURIAM:

This is an interlocutory appeal from an order denying a motion to compel arbitration. For the following reasons, we affirm the district court's order.

## I.

In the summer of 2010, the University of Alabama approved a project to construct a new student-housing complex on the University's main campus in Tuscaloosa, Alabama. The University retained Brice Building Company, LLC ("Brice"), as the general contractor. On March 8, 2011, Brice retained Atlantis Drywall and Framing, LLC ("Atlantis"), through a subcontract agreement ("Subcontract") to install drywall. The Subcontract contained the following arbitration provision:

> Paragraph CC. The parties acknowledge and agree that this Subcontract and the subject matter hereof is substantially connected with and involved with interstate commerce. In the event of a dispute(s), claim(s) or other matter(s) in question of any kind whatsoever between the parties (i) arising out of or related or collateral to the provisions and/or subject matter of this Subcontract or the breach thereof, or independent from the Subcontract or (ii) relating to any transaction or occurrence of any kind between the parties to this Subcontract or their officers, directors, agents and/or employees, it is agreed that the parties to this Subcontract will attempt to resolve such dispute(s), claim(s), or other matter(s) in question

---

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia, sitting by designation.

2

amicably by informal discussions and negotiations within a seven (7)-day period. Notwithstanding any conflicting or contrary provisions contained within the General Contract nor any provisions in this Subcontract that incorporates herein the terms and conditions of the General Contract by reference, all dispute(s), claim(s) and other matter(s) in question which cannot be settled by negotiation among the parties within such time shall at the election of, the Contractor (but not otherwise), be submitted by the parties to arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association except as such rules may be modified or restricted by any provision of this Subcontract. The parties intend that the scope of this arbitration clause shall be construed as broadly as possible so as to include, but not be limited to, the enforceability of this arbitration provision, the arbitrability of a particular claim or dispute, as well as any claims of misrepresentation, concealment of material facts, or fraud among the parties whether occurring before or after the execution of this agreement.

Notice of demand by Contractor for arbitration shall be filed in writing with the other party or parties to this Subcontract and with the American Arbitration Association and shall be made within a reasonable time after the dispute, claim or other matter in question has arisen but in no event shall be made after the date when institution of legal or equitable proceedings based on such dispute, claim or other matter in question would be barred by the applicable statute of limitations. . . . The Subcontractor agrees that any arbitration instituted under this paragraph shall, at Contractor's election, be consolidated with any other arbitration proceeding involving a common question of fact or law between the Contractor, the Owner, the Architect/Engineer or any of their agents, consultants or other representatives, and/or any other subcontractor(s) of any tier performing work in connection with the Project.

3

Because this was a public-works project, both Brice and Atlantis were statutorily obligated to obtain performance and payment bonds. *See* Ala. Code § 39-1-1. Atlantis sought to obtain these bonds from The Hanover Insurance Company ("Hanover"). As Hanover was not willing to assume the sole risk that any failure or default by Atlantis might result in a loss to it, Hanover required indemnification by Atlantis and its principals: Bay Meadows Consulting, LLC, ("Bay Meadows"), Marilourdes Deyo ("Deyo"), Laurence Lamphere and Christin Lamphere (the "Lampheres") (Atlantis's principals are collectively referred to as "Indemnitors"). On May 19, 2011, Hanover and the Indemnitors executed such an agreement ("Indemnity Agreement"). The Indemnity Agreement did not contain an arbitration provision. In relevant part, the Indemnity Agreement provided,

> The Hanover Insurance Company . . . has executed, or may in its discretion hereafter execute certain surety contracts, undertakings, and/or other instruments of guarantee of indemnity . . . .

Pursuant to this provision, on June 30, 2011, Hanover executed the statutorily required performance and payment bonds (the "Bonds"), which provided that Hanover would perform Atlantis's responsibilities under the Subcontract if Atlantis defaulted on its obligations. The Bonds specifically and expressly incorporated the Subcontract, stating in relevant part,

> WHEREAS, Principal [Atlantis] has by written agreement dated 3/8/11 entered into a subcontract with Obligee [Brice] for UA North Bluff Residential

4

> Community (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), Drywall, Metal, Framing, Acoustical Ceilings . . . which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.

To summarize, Atlantis was a party to all three agreements (the Subcontract, the Indemnity Agreement, and the Bonds). Hanover was a party to the Indemnity Agreement and the Bonds, and Brice was a party to the Subcontract and the Bonds. But the Indemnitors were parties to the Indemnity Agreement only.

Atlantis later defaulted on the Subcontract. Accordingly, Hanover made payments under the Bonds and then sought indemnification pursuant to the Indemnity Agreement. Atlantis and the Indemnitors failed to comply with Hanover's request, so Hanover filed a complaint against Atlantis and the Indemnitors[1] in the United States District Court of the Northern District of Alabama seeking indemnification, exoneration and *quia timet*, specific performance, and damages for breach of contract. Atlantis, the Lampheres, Bay Meadows, and Deyo each moved to compel arbitration under the Federal Arbitration Act and to stay judicial proceedings, and in the alternative, to dismiss, principally arguing that the Indemnity Agreement incorporated the Subcontract, and therefore its arbitration clause.

---

[1] The complaint also originally named Jeffrey D. Deyo as a defendant. Hanover and Jeffrey Deyo jointly stipulated that all claims against him should be dismissed without prejudice, and the court accepted the stipulation on January 10, 2014.

The district court denied the Lampheres' motion on September 4, 2013, and two weeks later, on September 18, 2013, denied both Bay Meadows's and Deyo's motions.   On September 26, 2013, the Indemnitors timely filed a notice of interlocutory appeal pursuant to 9 U.S.C. § 16(a).[2]

On August 29, 2014, a panel of this Court vacated the district court's order and remanded the case with instructions to order arbitration.   Hanover then petitioned for rehearing.  With leave, the Surety & Fidelity Association of America filed an amicus curiae brief in support of Hanover's petition.  On October 29, 2014, the Court vacated its previous panel opinion and granted rehearing. Thereafter, Hanover settled with Bay Meadows and the Lampheres.  Deyo, the lone remaining defendant-appellant, filed a motion on February 9, 2015, requesting that she be excused from oral argument. The Court granted Deyo's motion, removed the case from the oral-argument calendar, and accepted submission on the papers.

After carefully considering the record and the submission of the parties' briefs, we now affirm the district court's order denying Deyo's motion to compel arbitration.

---

[2] On October 7, 2013, the district court granted Atlantis's motion to compel arbitration against Hanover.  The Arbitration Panel issued its award on June 9, 2014.

## II.

"[This Court] review[s] *de novo* the district court's denial of a motion to compel arbitration." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011). The Federal Arbitration Act codifies the "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, ___ U.S. ___, 132 S. Ct. 665, 669 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). Notwithstanding this liberal policy, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960). Even though enforcement of this principle might result in "piecemeal litigation," the court must "rigorously enforce" the agreement of the parties. *See Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1295 (M.D. Ala. 2000) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-21, 105 S. Ct. 1238, 1241-42 (1985)). Whether an arbitration agreement exists is settled by state-law principles of contract law. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475, 109 S. Ct. 1248, 1254 (1989).[3]

Under Alabama law,

---

[3] Because the district court's jurisdiction was invoked based on diversity of citizenship, *see* 28 U.S.C. § 1332, the federal district court applies the substantive law of the state in which it sits, which in this case was Alabama. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.

*Fleetwood Enters., Inc. v. Bruno*, 784 So. 2d 277, 280 (Ala. 2000) (internal alteration, citations and quotation marks omitted). Here, Deyo has pointed to the Subcontract, which calls for arbitration, and Hanover acknowledges that the Subcontract contains an arbitration provision. Additionally, both parties agree that the Subcontract evidences a transaction affecting interstate commerce. Consequently, the burden shifts to Hanover to show that the arbitration provision within the Subcontract is not valid or does not apply to the dispute in question. *See Green Tree-Al LLC v. White*, 55 So. 3d 1186, 1189-90 (Ala. 2010).

In evaluating whether Hanover has satisfied this burden, we note that neither Hanover nor Deyo were parties to the Subcontract containing the arbitration provision. But that fact alone is insufficient to show that the arbitration provision does not apply to Hanover's claims arising out of Deyo's alleged breach of the Indemnity Agreement since the ability to compel arbitration is "not necessarily premised on the fact that both participants in the [proposed] arbitration proceedings are signatories to a contract calling for arbitration." *Green Tree*, 55 So. 3d at 1190.

8

Indeed, the Alabama Supreme Court has held that, in certain situations, "one may compel arbitration under a contract to which it is not a party, or . . . one who is not a signatory to a contract calling for arbitration must nevertheless arbitrate his or her claims." *Id*.

Specifically, a nonparty to an arbitration agreement may compel or be compelled to arbitration under Alabama law in four situations. First, arbitration may be compelled if the nonparty is a party to a contract that incorporates by reference the contract containing the arbitration provision. *McDougle v. Silvernell*, 738 So. 2d 806, 808 (Ala. 1999) (explaining that a party may incorporate by reference another document containing an arbitration provision); *see Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998) ("Parties to a contract are bound by pertinent references therein to outside facts and documents. Other writings . . . which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and[,] therefore, may properly be considered in the construction of the contract.") (alteration in original, citations and quotation marks omitted). A document incorporates by reference another document through explicit language, *see Dan Tucker*, 718 So. 2d at 36, or by "expressly refer[ring] to and sufficiently describ[ing]" the document to be incorporated. *Fid. & Deposit Co. of Md. v. Jefferson Cnty. Comm'n*, 756 F. Supp. 2d 1329, 1337 (N.D. Ala. 2010) (citation omitted).

9

Second, a non-signatory to a contract containing an arbitration provision can be compelled to arbitrate if another document that the party executed should be read together with the document containing the arbitration provision because together the documents memorialize the terms of a "single transaction." *See, e.g.*, *Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas*, 891 So. 2d 287, 290-91 (Ala. 2004); *Ingalls Iron Works Co. v. Ingalls*, 53 So. 2d 847, 849 (Ala. 1951) ("[D]ifferent writings, executed at the same time and relating to the same subject-matter, will be construed as one instrument." (internal citation and quotation marks omitted)). In this regard, "two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract." *Pac. Enters. Oil Co. (USA) v. Howell Petroleum Corp.*, 614 So. 2d 409, 414 (Ala. 1993) (quoting *Haddox v. First Ala. Bank of Montgomery, N.A.*, 449 So. 2d 1226, 1229 (Ala. 1984)). But party privity is not a requirement for various writings to be construed as one instrument under Alabama's single-transaction theory. *Haddox*, 449 So. 2d at 1229 (allowing the integration of several documents, all signed by different parties, to be construed as one contract to establish the terms of the contract).

Third, Alabama will enforce an arbitration provision in a contract to which the party moving for arbitration is not a signatory if the party is a third-party beneficiary of the contract containing the arbitration provision. *See Jenkins v.*

10

*Atelier Homes, Inc.*, 62 So. 3d 504, 512 (Ala. 2010). "A party claiming to be a third-party beneficiary must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." *Id.* (citations and quotation marks omitted).

Fourth, arbitration may be compelled where the doctrine of "intertwining" is satisfied. As the Alabama Supreme Court has explained, "intertwining" applies "where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim." *Jenkins*, 62 So. 3d at 512 (quoting *Fountain v. Ingram*, 926 So. 2d 333, 335 (Ala. 2005)). Key to the doctrine of "intertwining," however, is the requirement that "the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff." *Id.* (quoting *S. Energy Homes, Inc. v. Kennedy*, 774 So. 2d 540, 545 (Ala. 2000)). Where no arbitration is pending or imminent, "intertwining" cannot apply. *See id.* at 513 ("'[I]ntertwining' requires at least two threads to weave together—one cannot intertwine a single thread.").

Turning to the pending case, here, it matters not whether the Indemnity Agreement expressly incorporated the Subcontract and Bonds or whether the Indemnity Agreement, Subcontract, and Bonds constituted a single transaction. Under the unique facts of this case, the answer to each of those inquiries makes no difference to the determination of whether Deyo may compel arbitration. Even if

11

the Indemnity Agreement expressly incorporated the Subcontract and Bonds or the Subcontract, Bonds, and Indemnity Agreement were all part of a "single transaction," and therefore Hanover and Deyo could be viewed as parties to the Subcontract containing the arbitration provision, the arbitration provision itself does not permit Deyo to compel arbitration under the circumstances here. In relevant part, the provision states,

> [A]ll dispute(s), claim(s) and other matter(s) in question which cannot be settled by negotiation among the parties within such time shall ***at the election of, the Contractor (but not otherwise)***, be submitted by the parties to arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association except as such rules may be modified or restricted by any provision of this Subcontract.

Under the plain language of the arbitration provision, only Brice can compel arbitration. And Brice has not done so here.

While Brice did compel arbitration of a prior dispute related to the Subcontract, *see Hanover Ins. Co. v. Brice*, 7:13-cv-00547-LSC (N.D. Ala. May 31, 2013), that arbitration ended in 2014. And nothing within the Subcontract's arbitration provision indicates that once Brice has elected to arbitrate a particular dispute, it must arbitrate all subsequent, unrelated disputes. In fact, the Subcontract suggests the opposite: "The Subcontractor agrees that any arbitration instituted under this paragraph shall, ***at Contractor's election***, be consolidated with any other arbitration proceeding involving a common question of fact or law

12

between the Contractor, the Owner, the Architect/Engineer or any of their agents, consultants or other representatives, and/or any other subcontractor(s) of any tier performing work in connection with the Project." (Emphasis added). Therefore, it is irrelevant that Brice previously compelled Hanover to arbitrate in a separate action. If Brice—the only party authorized to compel arbitration—need not arbitrate all subsequent disputes under the contract,[4] no other party, including Deyo, has the authority under the Subcontract to compel arbitration. In short, even if the Subcontract and Bonds are incorporated into the Indemnity Agreement, or the three documents are read together as a part of a single transaction, the arbitration provision does not authorize Deyo to compel arbitration under the circumstances of this case.

Deyo similarly cannot rely upon the third-party-beneficiary theory in this Court since she has never contended that she may enforce the arbitration clause under that doctrine.[5] Accordingly, under Alabama law, this argument does not present a viable basis for compelling arbitration. *Jenkins*, 62 So. 3d at 512 (stating that because the parties attempting to compel arbitration had not contended that

---

[4] Assuming the viability of either or both the express-incorporation theory or the single-transaction theory, if Brice became entangled in the litigation pending between Hanover and the Indemnitors, Brice would have the ability to compel arbitration. That, however, is not the current case.

[5] Deyo has stated, "Alabama courts have long recognized that 'arbitration agreements may be enforced against a nonsignatory third party under either a third-party-beneficiary theory or an intertwined-claims theory.'" Deyo's entire argument, however, pertains only to the intertwined-claims theory, which is addressed *infra*.

13

they could enforce the arbitration provision under the third-party-beneficiary theory, the theory provided no basis for allowing them to compel arbitration).

Nor does the intertwining theory provide a basis for compelling arbitration. As previously mentioned, none of the parties to the various contracts at issue here—Brice, Atlantis, Hanover, and the Indemnitors—are currently engaged in arbitration related to a dispute arising from the Subcontract or Bonds, nor does it appear that any other arbitration proceeding will arise in the near future. Accordingly, no arbitration proceeding exists with which to "intertwine" Hanover's claim. *Jenkins*, 62 So. 3d at 512-13.

For the foregoing reasons, the district court's order denying Deyo's motion to compel arbitration is **AFFIRME**D.